Terri Lee HALDERMAN, et
al., Plaintiffs,

v.

PENNHURST STATE SCHOOL AND
HOSPITAL, et al., Defendants,

United States of America,
Plaintiff-Intervenor,

Pennsylvania Association for Retarded
Citizens, et al., Plaintiffs-Intervenors.

Civ. A. No. 74–1345.

United States District Court,
E. D. Pennsylvania.

Jan. 26, 1982.

David Ferleger, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

Robert B. Hoffman and Alan Warshaw, Deputy Attys. Gen., Harrisburg, Pa., for the Commonwealth of Pa.

Thomas Gilhool, Public Interest Law Center, Philadelphia, Pa., for Pa. Ass'n for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Ass'n.

Adjor A. Burrow, Civ. Rights Div., Main Justice, Dept. of Justice, Washington, D. C., R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On August 25, 1981, this Court found defendants Commonwealth of Pennsylvania Department of Public Welfare (DPW) and its secretary, the Honorable Helen O'Bannon, (hereinafter Commonwealth defendants) in contempt of court. Contempt proceedings against the Commonwealth defendants were initiated by plaintiffs, who filed a petition for a finding of contempt and levy of civil fine against the Commonwealth defendants with this Court on July 1, 1981. On July 24, 1981, a hearing was held, pursuant to this Court's Order of July 7, 1981, ordering the hearing to show cause why the Commonwealth defendants should not be held in civil contempt in connection with their failure to comply with this Court's Orders of June 4, 1981.

On August 25, 1981, this Court found the Commonwealth defendants were in civil contempt because of their failure to comply with this Court's Orders of June 4, 1981 to pay into the Registry of this Court $67,746.08 by July 1, 1981 for the purpose of defraying the expenses of the Special Master and the Hearing Master, and the Order of July 14, 1981 to pay $67,746.08 into the Court Registry by August 1, 1981 for the same purpose.

As is well-known to the litigants, the Commonwealth defendants had been ordered (Orders of March 17, 1978, July 27, 1978, and April 24, 1980) to fund the Master's offices and, pursuant to monthly orders, pay into the Registry of this Court the amounts budgeted each month for the payment of the salaries, wages, and other expenses of both the Hearing Master's office and the Special Master's office. On June 4, 1981, this Court signed, and on June 5, 1981, the Clerk entered two Orders for payment of the costs of the Special Master and the Hearing Master for the month of July, 1981, in the amounts, respectively, of $59,-152.74 and $8,593.34, a total of $67,746.08. These Orders specified that payment was to be made "on or before the first day of July, 1981." The Commonwealth defendants made no payment pursuant to the Order of June 4, 1981 on or before July 1, 1981. At a conference on July 6, 1981, the Commonwealth defendants advised the Court that they would soon be paying $35,000.00 into the Registry of the Court for the purpose of closing the Office of the Special Master and that no additional sums would be paid unless the Legislature passed a supplemental appropriation.

On July 7, 1981, this Court issued an Order to show cause why the Commonwealth defendants should not be held in civil contempt in connection with their failure to comply with the Court's Order of June 4, 1981 to pay $67,746.08 into the Registry of the Court on or before July 1, 1981 for the purpose of defraying the costs of the Special Master and the Hearing Master. On or about July 13, 1981, the Commonwealth defendants paid into the Registry of the Court the sum of $35,000.00. On July 16, 1981, this Court entered an Order directing that the $35,000.00 be paid to the Office of the Special Master and made a finding that the Commonwealth defendants were in default in the amount of $32,746.08. Since that time, the Commonwealth defendants have failed to comply with eight subsequent funding Orders of this Court. The Commonwealth defendants' default now exceeds $371,478.27. On July 24, 1981, at the hearing on the Order to show cause why the

Commonwealth defendants should not be held in civil contempt, the Commonwealth defendants again advised the Court that they did not intend to comply with the Court's Orders concerning the expenses of the Masters.

Based on these events and evidence adduced at the July 24 hearing, the Court concluded that the Department of Public Welfare and its Secretary, Helen O'Bannon, were in contempt of Court (Memorandum of August 25, 1981). Specifically, the Court found that as a result of the actions of the Secretary and the Department the Legislature did not make an appropriation for the continued functioning of the Masters' offices (Memorandum of August 25, 1981 at 14–18). This Court's Order of August 25, 1981 directed the Department to fund the Master's offices on or before September 2, 1981 or commence paying into the Registry of this Court $10,000.00 per day as a civil contempt fine. Rather than fund the Masters' offices, the Commonwealth defendants determined to remain in contempt of this Court's Orders but did, however, pay the civil fine of $10,000.00 per day. As of this date, the total amount of the civil fines paid into the Registry of this Court exceeds $1,200,000.00.

On October 21, 1981, the Court transferred $87,314.30 of the sum resulting from the Commonwealth defendants' payments of civil contempt fines to the Special Master and $13,695.60 to the Hearing Master. On December 11, 1981, the Court ordered further transfer of the sum resulting from the payment of civil contempt fines, $80,371.12 to the Special Master and $13,588.14 to the Hearing Master. More than $1,000,000.00 of the fund generated by the fine payments remains subject to Court Order.

As is now well-known to the litigants, this Court, in an opinion filed December 23, 1977, made findings of fact and conclusions of law holding that defendants were violating the constitutional and statutory rights of members of the plaintiff class by failing to provide them with minimally adequate habilitation in the least restrictive environment. As the trial record in this case re-

vcals, all parties to this litigation admitted that the residents of Pennhurst were not receiving minimally adequate habilitation. The Court found that Pennhurst as an institution is inappropriate and inadequate to habilitate the retarded. At trial, the Commonwealth defendants represented that they intended to close Pennhurst in the early 1980's. This they have not done.

On January 6, 1978, this Court held a hearing to determine the injunctive remedy necessary. The parties were asked to attempt to agree on the terms of the Court's Orders, but no agreement was forthcoming. The Court requested that they submit separate proposed orders. On March 17, 1978, the Court issued an injunction which, among other things, created the Office of the Special Master. The Special Master was appointed to monitor defendants' planning for and the providing of community living arrangements and services. In addition, the Special Master has been directed to monitor living conditions at Pennhurst, as well as in the community facilities to which Pennhurst residents have been transferred. The Commonwealth defendants, when not faced with contempt proceedings during a two and a-half year period from the entry of this Court's Order of March 17, 1978 through the end of August, 1980, transferred only 122 of approximately 1,200 Pennhurst residents to community living arrangements. The Commonwealth defendants' failure to comply with this Court's Orders during that period underscored the need for the Masters' offices.

On December 13, 1979, the Court of Appeals approved this Court's appointment of the Special Master, and its "determination that, for the retarded class members as a whole, Pennhurst cannot be an appropriate setting in which to provide habilitation." (612 F.2d at 114). In remanding to this Court, the Court of Appeals directed that an individual hearing should be held for any Pennhurst resident who contends that the living arrangements and services available at Pennhurst are more beneficial to his or her habilitation than those made available in the community.

In light of the Third Circuit's opinion, this Court established an impartial hearing procedure and appointed a Hearing-Master who was directed to provide an individual hearing for any Pennhurst resident who contended that his or her habilitation at Pennhurst would be more beneficial than that proposed in the community living arrangement. (Order of April 24, 1980).

This Court's Orders provide that the Special Master and the Hearing Master shall be compensated by the Commonwealth defendants (Orders of March 17, 1978; July 27, 1978; April 24, 1980; and June 10, 1980). The funds required for the operation of the Master's offices are costs of litigation under Federal Rules of Civil Procedure 53 and 54 and were assessed against one of the losing parties by this Court. The Commonwealth defendants did not appeal these Orders. They complied with these Orders and paid the Masters' costs during fiscal years 1978–79, 1979–80, and 1980–81. Funds for those payments were included in the Commonwealth's budget for Pennhurst. In fiscal year 1981–82, however, the Department of Public Welfare and Secretary Helen O'Bannon took steps which this Court found to have been designed to thwart the Court's Orders mandating funding for the Masters' offices. As heretofore discussed in greater detail, the Court found the Department and Secretary O'Bannon in contempt of court and imposed a compensatory coercive civil contempt fine upon the Commonwealth defendants for each day that the Masters' offices remained unfunded after September 2, 1981 (Order of August 25, 1981).

On September 3, 1981, United States Supreme Court Justice William J. Brennan, acting as Circuit Justice for the Third Circuit, issued a temporary stay of this Court's contempt Order pending full review of the Commonwealth defendants' application for a permanent stay pending appeal to the Third Circuit. The Third Circuit had already denied a stay. On September 17, 1981, Circuit Justice Brennan denied the application for a stay and vacated his temporary stay Order. The Commonwealth defendants, pursuant to Supreme Court rules,

resubmitted the matter to Justice Rehnquist, who referred the application to the full Court, which denied the application for a stay on October 5, 1981.

As this Court has found, the continued operation of the Office of the Special Master and the fulfillment of her duties on behalf of the retarded residents is necessary for the purpose of monitoring the defendants' compliance with this Court's Orders and is essential for the purpose of assuring that the retarded residents of Pennhurst are being transferred to community facilities that are safe, sanitary and beneficial to their habilitation. The Hearing Master conducts hearings for each Pennhurst resident for whom a community living arrangement has been prepared for the purpose of determining whether the proposed transfer from Pennhurst to the community is "voluntary", as well as for the purpose of determining whether the proposed community living arrangement will be beneficial to his or her habilitation. The Court is vitally concerned that no retarded resident of Pennhurst or any other member of the plaintiff class be transferred to any community living arrangement that is not beneficial to his or her habilitation. The Masters' offices ensure that the poor sanitation, safety, habilitation, and training conditions found to exist at Pennhurst are not duplicated on a smaller scale in community living arrangements.

For the reasons set forth in its Memorandum of January 6, 1982, the Court found the Commonwealth defendants likewise in contempt for their failure to comply with the Court's Orders of August, September, October, and November. In its Memorandum of August 25, 1981, the Court detailed its reasons for holding the Commonwealth defendants in contempt. Essentially, the Court found that Secretary O'Bannon and the Department had failed to act with due diligence and steadfast purpose to comply with the valid Orders of this Court. As a result, the Masters' offices were without funding.

The Court, in its Memorandum of August 25, 1981, concluded that it possessed inherent equitable powers to effectuate compliance with its Orders through the imposition of civil contempt fines. The Court rejected Commonwealth defendants' argument that Secretary O'Bannon had acted in good faith, finding good faith inapplicable to a civil contempt proceeding. Furthermore, the Court found that she had not acted in good faith. The Court also rejected the Commonwealth defendants' contention that the action of the Legislature raised a state law barrier to compliance by the Commonwealth defendants. See Memorandum of August 25, at 13–22. Thus, after various challenges to the Court's contempt Order, the Commonwealth defendants began paying a civil contempt fine of $10,000.00 per day.

The Commonwealth defendants, while paying $10,000.00 per day in fines, have nevertheless failed to comply with this Court's Orders of June 4, 1981, July 14, 1981, August 20, 1981, September 16, 1981, October 22, 1981, November 18, 1981, and November 24, 1981, ordering them to pay a total of $406,478.27 into the Registry of this Court for the purpose of defraying the costs of the Special Master and the Hearing Master. To date, the Commonwealth defendants have paid only $35,000.00 of this amount.

Although the Commonwealth defendants have failed to comply with this Court's Orders requiring them to fund the Masters' offices, the Court purged them of contempt in its Order of January 8, 1982 and relieved them of their obligation to continue to pay $10,000.00 per day in coercive and compensatory civil contempt fines. The Court noted that the amount of civil contempt fines paid by the Commonwealth exceeded the Masters' budgets for the remainder of the Commonwealth's fiscal year, which ends June 30, 1982. The Court's Order of August 25, 1981 also directed the Commonwealth defendants to appear before this Court at 9:30 a.m. on Thursday, October 15, 1981 to show cause why the Court should not impose on them a compensatory fine in an amount sufficient to compensate the plaintiffs for the costs and counsel fees

incurred in the preparation and trial of the contempt proceedings. For the purpose of ascertaining the amount of the compensatory fine sufficient to compensate plaintiffs for costs and counsel fees, plaintiffs' counsel were ordered to submit affidavits on or before October 1, 1981, setting forth in detail the time expended by counsel, the matter in which the time was expended, and the costs incurred in the preparation and trial of the contempt proceedings.

David Ferleger, Esquire, and Penelope Boyd, Esquire, attorneys for plaintiffs Halderman, et al., submitted the required affidavits on October 1, 1981. Plaintiffs' attorneys Thomas K. Gilhool and Frank J. Laski, Esquire, attorneys for plaintiff-intervenor PARC submitted their affidavits on October 16, 1981. At a conference in chambers on the morning of October 15, 1981, counsel for the Commonwealth defendants stated that they did not contest the authority of this Court to require the Commonwealth defendants to pay reasonable counsel fees and costs to plaintiffs' attorneys in connection with the contempt proceedings. Several decisions of the United States Supreme Court authorize fees awards in connection with contempt citations. *See, e.g., Hutto v. Finney,* 437 U.S. 678, 689–93, 98 S.Ct. 2565, 2572–74, 57 L.Ed.2d 522 (1978); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Fleischmann–Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

Commonwealth defendants did, however, dispute some of the hours submitted by plaintiffs' counsel. Because of this factual dispute, the Court set the matter for hearing. On Thursday, October 29, 1981, a hearing was held to determine the reasonable attorneys' fees and costs incurred by plaintiffs.

In determining the reasonable counsel fees, this Court is guided by the decisions of the Third Circuit as set down in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., et al. (Lindy I),* 487 F.2d 161 (3d Cir. 1973); *Lindy Bros. v. American Radiator & Standard Sanitary Corp., et al. (Lindy II),* 540 F.2d 102 (3d Cir. 1976); *Rodriguez v. Taylor, et al,* 569 F.2d 1231 (3d Cir. 1977), cert. den., 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), and *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978).

*Lindy I,* as refined by these subsequent cases, requires the Court first to determine the number of compensable hours spent on the case by examining the activities of counsel and deciding whether the hours claimed were reasonably necessary to produce the benefit conferred. The court must then determine the reasonable hourly rate of compensation for each attorney. These rates vary according to the nature of the services performed as well as the qualifications, ability, and experience of counsel. Multiplying the number of hours by the hourly rate produces the lodestar figure. This amount may be adjusted to reflect the quality of the work, the contingent nature of success, and the benefit produced for the prevailing party. Following the *Lindy* calculus, the Court determines that plaintiffs' attorneys are entitled to the following amounts. David Ferleger: $18,301.50 plus $806.25 for the work of law student Douglas Schoppert. Penelope Boyd: $12,684.38; Thomas K. Gilhool: $26,684.38; Frank J. Laski: $4,062.50; Herbert Newberg: $1,942.50.

The contempt proceedings concerning the funding of the Special Master and the Hearing Master presented complex and novel questions of law. State officials do not usually defy federal court orders, and our attention has not been called to any case in which state officials refused to pay costs of litigation after a trial. The Commonwealth defendants' contempt required careful and thoughtful analysis on the part of Court and counsel. After the Court's finding that the Commonwealth defendants were in contempt, there remained the less-charted course of determining the proper remedy. Counsel for plaintiffs presented alternative methods to be considered by the

Court for the purpose of obtaining compliance with the Court's Orders to fund the Masters' offices. The proceedings researched by counsel for the plaintiffs included adding the State Treasurer as a party to the litigation, issuing a writ of execution on state property, and incarcerating the Commonwealth defendants. Plaintiffs' briefs were most helpful to the Court in outlining each of the aforementioned options. Undoubtedly, the special nature of these proceedings required plaintiffs' counsel to expend more time on the matter than would be required of a routine matter. With this in mind, the Court has scrutinized the affidavits submitted by plaintiffs' counsel, paying particular attention to the portions of the affidavits contested by the Commonwealth defendants.

*Hours Submitted by Counsel*

*David Ferleger, Esquire*

David Ferleger, Esquire, attorney representing plaintiffs Terri Lee Halderman, et al., has submitted three affidavits to this Court detailing the hours which he devoted to the contempt proceedings. His original affidavit of July 30, 1981 claims 39.4 hours; his first supplemental affidavit of September 30, 1981 claims 13.2 hours and also claims 41.5 hours expended by a law clerk; his second supplemental affidavit of October 27, 1981 claims 5.8 hours.

Mr. Ferleger's affidavit of July 30 sets forth the time he expended on these matters in sufficient detail. The times claimed appear consonant with the magnitude of the tasks described. However, .3 hours claimed by Mr. Ferleger on June 9 and June 17 will be disallowed. It was not until June 25, 1981 that the Commonwealth defendants formally notified this Court that they would pay only $35,000.00 of the $67,-746.08 ordered deposited in the Registry of this Court pursuant to the Court's Orders of June 4, 1981. While events throughout the Spring and Summer suggested to plaintiffs that the Commonwealth defendants might cease funding the Masters' offices, the Court must establish some demarcation point signifying the beginning of the contempt situation. The Commonwealth defendants' letter of June 25 provides this boundary. Therefore, hours claimed by Mr. Ferleger—and all plaintiffs' counsel—prior to June 25, 1981 will be disallowed.

At the October 22nd hearing, counsel for the Commonwealth defendants questioned whether time spent by Mr. Ferleger drafting a writ of execution was reasonably justified. This writ was submitted by Mr. Ferleger to provide a model for the Court should it choose to employ the execution on property method of remedying the civil contempt. Because of the difficult nature of the remedies question presented by the Commonwealth defendants' contempt, the Court approves the limited amount of time claimed by Mr. Ferleger in relation to the writ of execution. Mr. Ferleger also seeks fees for Douglas Schoppert, a third-year law student who performed legal research and related activities to aid Mr. Ferleger regarding the contempt.

Courts have taken different approaches to the question of awarding fees for the work of paralegals and law students. *See generally* A. Miller, *Attorney's Fees in Class Actions* (1980). Some courts have considered paralegal and law student time as part of an attorney's overhead, costs that should be included in his usual hourly rate. *See, e.g., Pacific Engineering & Road Co. of Nevada v. Kerr-McGee Corp.*, 21 F.R. Serv.2d 404 (D.Utah 1976). Others have viewed paralegal time as an expense of the attorney, recoverable as the out-of-pocket cost incurred by the attorney in retaining the paralegal or law student. *See, e.g., City of New York v. Darling-Delaware*, 440 F.Supp. 1132 (S.D.N.Y.1977). Other courts have adopted the view that fees of paralegals and law students are recoverable in their own right. *See, e.g., Dorfman v. First Boston Corp.*, 70 F.R.D. 366 (E.D.Pa.1976); *Entin v. Barg*, 412 F.Supp. 508 (E.D.Pa. 1976).

As Chief Judge Lord observed in *Dorfman, supra,*

Class counsel's petition also includes time worked by a para-professional. This is not time which, strictly speaking, in-

volved the provision of legal services or expertise. We cannot agree with the Second Circuit that class counsel may only recover for the out-of-pocket cost of the para-professional rather than a fee based on a reasonable per hour charge. First, we note from counsel's petition that the practice is to bill para-professional time at a per hour fee. If in class actions only out-of-pocket costs can be recovered, there would be the temptation to use paralegals only for matters which are billed to the client, and use attorneys for all cases involving representation in a class action suit. To do otherwise would be economically irrational. We believe that a more desirable result is that para-professionals be employed in class action suits in the same manner and with the same frequency that they are employed in cases where the client is billed directly. While plaintiffs here may have to pay a few more dollars, the overall result will be the more efficient and economical delivery of legal services. We note that other courts in passing upon time worked by legal assistants have awarded a fee based on a reasonable per hour charge.

For similar reasons, we believe work by a law student should be valued on a reasonable per hour basis. 70 F.R.D. at 374 (citations and footnotes omitted).

■ Professor Miller, in his report to the Federal Judicial Center, recommended that fee awards "include adequate compensation for paralegal time, based on the accounting procedures of the particular lawyer or firm. A. Miller, *supra*, at 371. Mr. Ferleger is a sole practitioner, who usually works without associates or paralegals. His retention of Mr. Schoppert during the summer of 1981 was therefore similar to hiring a recent law school graduate, whose time in this matter would be compensable at a reasonable hourly rate. In this instance, it is reasonable to view Mr. Schoppert's work as the Court would view that of a recent graduate. Thus, under the rationales of Chief Judge Lord and Professor Miller, it is appropriate that Mr. Ferleger be awarded a reasonable fee for the work of Mr. Schoppert.

■ Mr. Schoppert claims 41.5 hours for research and preparation for this Court's July 24 contempt hearing. Included in this are 10.5 hours categorized under the heading "Hearing on contempt for failure to comply with March 2 order." Seven of these so-denominated hours were incurred on July 24, the date of this Court's hearing. While Mr. Schoppert's presence at the hearing and consequent availability to Mr. Ferleger undoubtedly aided Mr. Ferleger in his presentation of plaintiff's case, the Court questions whether this assistance was of sufficient value to require this Court to compensate Mr. Schoppert for all seven hours submitted on July 24. Accordingly, the Court will disallow 3.5 of those hours. Similarly, the ambiguity of Mr. Schoppert's submissions under this category on August 4 (3.5 hours) and August 11 (2.0 hours) requires that 2.75 of these claimed hours be disallowed.

To summarize, the Court finds that 58.1 of the 58.4 hours submitted by Mr. Ferleger is compensable time and that 35.25 of the 41.5 hours submitted by him for Mr. Schoppert is also compensable.

*Penelope A. Boyd, Esquire*

■ Attorney for plaintiffs Halderman, et al., Penelope A. Boyd, Esquire, has submitted three affidavits to this Court in connection with her hours concerning the Commonwealth defendants' contempt. Ms. Boyd's August 18, 1981 affidavit claims 87.0 hours; her first supplemental affidavit of October 1 claims 31.0 hours; her second supplemental affidavit of October 27 claims 11.75 hours. Of the 87.0 hours submitted in the first affidavit, 80.75 are classified as "Research" or "Research/drafting," without further explanation. The hours submitted by Ms. Boyd appear excessive even in light of the volume of research required by the contempt proceedings. The Court will not approve all of the 80.75 hours, particularly since some of the time is vaguely characterized. Accordingly, the Court will disallow 10.0 of the 80.75 research and drafting hours submitted in Ms. Boyd's first affidavit.

Ms. Boyd's first supplemental affidavit claims 31.0 hours, all required in preparation of plaintiffs' responses to the Commonwealth defendants' attempts to seek a stay of this Court's Order of August 25, 1981. At the October 29 hearing, counsel for the Commonwealth defendants questioned Ms. Boyd as to possible duplication of her work in response to Commonwealth defendants' stay applications before the Third Circuit and the United States Supreme Court. Ms. Boyd testified that, while some portions of the Supreme Court response were very similar to the Third Circuit response, the former required significant revision in some areas. This Court finds her 4.5 hours required for the Supreme Court response reasonable in light of the importance of that pleading.

Continuing this line of inquiry, counsel for the Commonwealth defendants questioned Ms. Boyd's 26.5 hours submitted for the response to the stay application before the Third Circuit, on the ground that the legal questions involved had been researched by plaintiffs for the July 24 contempt hearing. Ms. Boyd testified that the statement of the facts to inform the Appeals Court required more detail than that needed for the District Court pleadings, as this Court was quite aware of the Commonwealth defendants' refusal to obey its Orders. She further testified that the response before the Third Circuit involved research into questions of jurisdiction, finality, and appealability that must be presented in plaintiffs' response. Based on the hearing testimony during Ms. Boyd's cross-examination, the Court is satisfied that the 31 hours claimed in her first supplemental affidavit are reasonable.

Ms. Boyd's second supplemental affidavit of October 27 claims 11.75 hours. Included here are hours claimed for research and drafting in connection with plaintiffs' motion to apply consent decree funds deposited in the Registry of this Court by the County of Philadelphia and court funds generated by the civil contempt fines to fund the Masters' offices for the benefit of the plaintiff class. The Court issued an Order similar to that sought by plaintiffs and transferred approximately $100,000.00 of the Court fund generated by civil contempt fines to the Masters on October 21, 1981. The second supplemental affidavit also claimed hours related to plaintiffs' motion for a second finding of contempt against the Commonwealth defendants, who have ignored Orders of this Court subsequent to August 25, 1981 directing payment of the Masters' offices. At the October 29 hearing, Ms. Boyd was cross-examined as to the reasonableness of the hours which she set forth in her affidavit. Based on the hearing testimony, this Court will allow the 11.75 hours claimed in Ms. Boyd's second supplemental affidavit.

In summary, the Court finds reasonable 119.75 hours of the 129.75 hours submitted by Ms. Boyd is compensable time.

*Thomas Gilhool, Esquire*

On October 14, 1981, Thomas Gilhool, Esquire, attorney for plaintiff-intervenor Pennsylvania Association for Retarded Citizens (PARC) submitted one affidavit of 185.75 hours to this Court. Most of his claimed hours appear reasonable in relation to the contempt proceeding and duration of time required. However, the Court will disallow some of the time claimed by him. Mr. Gilhool claims 7.0 hours preceding the Commonwealth defendants' June 25 official notice that they would not pay the full amount specified in this Court's Order of June 4, 1981. For the reasons earlier stated, these hours are too remote from the contempt proceeding to be allowed.

The 44.0 hours claimed by Mr. Gilhool for drafting a response to the Commonwealth defendants' application to the Third Circuit for a stay appears reasonable in view of the uniqueness and complexity of the matter. Some of Mr. Gilhool's remaining hours will be disallowed: 1.0 hours for conference with plaintiffs' counsel on July 23, as the entry is vague; 1.0 hours for telephone conference with plaintiffs' counsel on September 3, as this entry is too vague to evaluate; 1.0 hours for conference with counsel on September 15 and 1.0 hours for conference with counsel on September 18, also because of vagueness.

In summary, 185.75 hours have been claimed by Mr. Gilhool; 11.0 hours are disallowed; 174.75 hours are approved as compensable time.

### Frank Laski, Esquire

Mr. Laski, along with Mr. Gilhool, represents plaintiff-intervenor PARC. Together with Mr. Gilhool, he submitted to this Court on October 27 an affidavit claiming 32.5 hours. At the October 25 hearing, counsel for the Commonwealth defendants did not question Mr. Laski as to any specific hours claimed. Since Mr. Laski's affidavit specifically documented his work in the matter, the Court will approve the 32.5 hours submitted by Mr. Laski.

### Herbert Newberg, Esquire

■ Mr. Newberg acted as counsel for plaintiffs' attorneys Ferleger and Boyd in connection with attorneys' fees in this matter. Hours spent in preparation of a fee application are compensable. *Prandini v. National Tea Co.*, 585 F.2d 47, 54 (3d Cir. 1978). Therefore, Mr. Newberg may recover fees for his hours to the extent that the Court allows. On October 15, 1981 and October 28, 1981, Mr. Newberg submitted affidavits claiming 12.95 hours of time. The Court finds that the 12.95 hours submitted by Mr. Newberg are compensable time.

### Hourly Rates

### David Ferleger, Esquire

■■ David Ferleger, who requests $105 per hour, has practiced law for approximately nine years. During that time, he has become recognized nationally as an outstanding trial counsel in legal actions designed to improve the lives of the handicapped. He has represented the plaintiff class in this litigation since its inception in 1974, and has been trial counsel in other major litigation in this district, including cases such as *Vecchione v. Wohlgemuth*, 426 F.Supp. 1297 (E.D.Pa.1979). In *Vecchione*, a 1979 rate of $90 per hour was found reasonable for Mr. Ferleger. *Vecchione v. Wohlgemuth*, 481 F.Supp. 776 (E.D.Pa. 1979). Counsel for the Commonwealth de-

fendants has questioned the hourly rates submitted by some counsel but not that of Mr. Ferleger. This Court finds that the hourly rate of $105 per hour requested by Mr. Ferleger is most modest in light of his outstanding legal abilities and trial accomplishments. The Court finds the $25 per hour rate claimed by Mr. Ferleger for Douglas Schoppert, a third-year law student, is reasonable.

### Penelope Boyd, Esquire

■ Penelope Boyd, who requests $75 per hour, has practiced law for only two years. During that time, however, she has accumulated a considerable amount of litigation experience. In 1979–80, she served as project coordinator for the Philadelphia Bar Association's Mental Disability Project. While a law student, she clerked with Mr. Ferleger. In effect, she has been involved in this litigation for four years. In light of her intensive experience with the difficulties of this case and her outstanding contribution in researching the applicable law, the Court finds a rate of $75 per hour appropriate for her work. This figure is well within the billing ranges for second-year associates established by local law firms performing similar work.

### Thomas Gilhool, Esquire

■ Thomas Gilhool is an outstanding trial attorney whose legal experiences are wide and varied. He requests $150 per hour. In his seventeen years of practice, he has acquired expertise equivalent to that of a partner of similar years experience in the larger law firms in the Philadelphia area. His requested $150 per hour rate is most reasonable when compared to other outstanding trial counsel in private practice, particularly in light of his outstanding legal abilities and trial accomplishments.

Although Mr. Gilhool, as chief counsel for the Public Interest Law Center of Philadelphia (PILCOP), has no customary billing rate that this Court may use in determining his lodestar, the Court may look to the billing rates of other outstanding trial counsel in the Philadelphia area. The affidavits

submitted by Mr. Gilhool and Mr. Laski contain a survey of the billing rates of law firms in Philadelphia. Counsel for the Commonwealth defendants did not question the accuracy of this survey, but did argue that these rates should not be used to measure the compensation of a Public Interest lawyer. The Court finds defendants' contentions unpersuasive. *See, e.g., Vecchione v. Wohlgemuth,* 481 F.Supp. 776 (E.D.Pa. 1979); *In re Three Mile Island Litigation,* C.A. No. 79–0432 (fee petition filed in Middle District of Pennsylvania in August, 1980) and discussion *infra* at 659. In light of the information adduced at the hearing, this Court finds reasonable a rate of $150 per hour for Mr. Gilhool's time.

*Frank Laski, Esquire*

■ Mr. Laski, who requests $125 per hour, has practiced law for 14 years. Like Mr. Gilhool, with whom he works at PIL-COP, Mr. Laski has compiled an impressive record in major litigation. According to the survey discussed in Attachment C of the Gilhool-Laski fees affidavit, attorneys with similar experience in private firms charge $125 per hour for their services. Mr. Laski's requested rate compares favorably with that awarded to or claimed by attorneys of similar experience. *See, e.g., Vecchione v. Wohlgemuth, supra* at 793 (E.D. Pa.1979); *In re Three Mile Island Litigation, supra.*

*Herbert Newberg, Esquire*

■ Mr. Newberg has practiced law for 19 years and is experienced in the field of attorneys' fees in class actions. He requests $175 per hour. He was awarded fees at the rate of $150 per hour in 1979 for his work in *Vecchione, supra.* While Mr. Newberg has competently represented Mr. Ferleger and Ms. Boyd in this fee matter, the attorneys' fees petitions did not present complex issues. The Court has determined, therefore, that a reasonable hourly rate for Mr. Newberg in this matter is $150. As the Third Circuit declared in *Lindy I,* a "reasonable rate of compensation differs for different activities." 487 F.2d at 167.

*Public Interest Law Firms and Fees Recovery*

■ The Commonwealth defendants have questioned the propriety of awarding fees to Mr. Gilhool and Mr. Laski as both men are salaried attorneys working for PILCOP, a public interest law firm. PILCOP is a non-profit organization which derives funds from the contributions of private persons, law firms, and charitable foundations, as well as the recovery of attorney fees in some of its cases. The Third Circuit has observed that

> awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel. The presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards .... Of course, since the object of fee awards is not to provide a windfall to individual plaintiffs, fee awards must accrue to counsel.

*Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir. 1977), citing *Torres v. Sachs,* 538 F.2d 10, 13 (2d Cir. 1976), *Brandenburger v. Thompson,* 494 F.2d 885, 889 (9th Cir. 1974), *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 538–39 (5th Cir. 1970); *Hairston v. R&R Apartments,* 510 F.2d 1090, 1093 (7th Cir. 1975). *Rodriguez* clearly establishes the principle that lawyers in non-profit public interest firms may recover fees on the same basis and in the same manner as attorneys in private practice. 569 F.2d at 1245–47.

*Adjustment of the Lodestar*

■ Attorneys Gilhool, Laski and Newberg have not asked that their lodestar fee amounts be increased. No adjustment has been requested for the work performed by law student Douglas Schoppert. As discussed above, *Lindy I* and *Lindy II* provide that a Court may increase or decrease the lodestar figure based on the quality of the legal work and the contingent nature of the case. In civil rights cases, fees may be adjusted upward where counsel's work has advanced an important substantive purpose of the civil rights acts. *See Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978); *Vec-*

*chione v. Wohlgemuth,* 481 F.Supp. 776, 778, 793, 796–98 (E.D.Pa.1979). However, the Court will not consider adjusting the lodestar upward where counsel has not requested it to do so and, of course, there is no basis to decrease it in this case.

■ Both Mr. Ferleger and Ms. Boyd have requested the Court to increase their lodestar figures. They note the novel and complex nature of the legal problems presented by the Commonwealth defendants' contempt and as well as the contingent nature of their participation in this case. Both Mr. Ferleger and Ms. Boyd are private practitioners who have specialized in litigation on behalf of the handicapped. In this case, they represented the retarded members of the plaintiff class. The compensation which they will receive in this litigation must come from fee awards. The contingent nature of their work in this matter merits an upward adjustment of the lodestar. As the Court has noted, the civil contempt proceeding involved complex legal issues. The quality of their work and their accomplishments in these contempt proceedings on behalf of the retarded residents of Pennhurst justifies an upward adjustment in their lodestars. Their legal work in the contempt proceedings not only benefitted the class which they represented, but also aided this Court in upholding the jurisdictional authority of a federal court to compel compliance by the Commonwealth defendants with its lawful orders.

As heretofore noted, Mr. Ferleger's hourly rate, when compared to his abilities and expertise as a trial counsel, is modest. His lodestar in connection with these contempt matters amounts to $6,100.50. The Court has determined that he is entitled to an adjustment upward by a factor of 3. Ms. Boyd's lodestar of $8,456.25 will be multiplied by a factor of 1.5.

*Summary*

The following chart presents the hours, billing rates, and multipliers approved by the Court for the plaintiffs' attorneys listed below. An order directing the Commonwealth defendants to pay these amounts to the listed plaintiffs' attorneys will be accordingly entered.

| Attorney | Hours | Rate | Lodestar | Multi-plier | Total | |
|---|---|---|---|---|---|---|
| David Ferleger (for Douglas | 58.1 | $105/hr | $ 6,100.50 | 3 | $18,301.50 | $19,107. |
| Schoppert) | 32.25 | 25/hr | 806.25 | 0 | 806.25 | |
| Penelope Boyd | 119.75 | 75/hr | 8,981.25 | 1.5 | 13,471.88 | |
| Thomas Gilhool | 174.75 | 150/hr | 26,212.50 | 0 | 26,212.50 | |
| Frank Laski | 32.5 | 125/hr | 4,062.50 | 0 | 4,062.50 | |
| Herbert Newberg | 12.95 | 150/hr | 1,942.50 | 0 | 1,942.50 | |
| | | | | | $64,797.13 | |