**Frank P. LeMASTER**

v.

**Walter BULL, Allen Rogers and Company, Falcon Exploration Corporation and Falcon Production Corporation.**

**Civ. A. No. 82–4454.**

United States District Court,
E.D. Pennsylvania.

March 6, 1984.

Francis X. Nolan, Harry C.J. Himes, Himes, Sanders, Bunting & Nolan, Philadelphia, Pa., for plaintiff.

Steven M. Kramer, Philadelphia, Pa., for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

Currently pending before this court are plaintiff's petitions for attorney's fees for (1) the prosecution of this action and (2) a motion to hold defendant in contempt. Although in American practice the prevailing party does not normally recover attorney's fees, there are certain statutory and nonstatutory exceptions to this general rule.

1. *Attorney's Fee Award Under 15 U.S.C. § 77k*

The Securities Act of 1933, 15 U.S.C. § 77k, allows a prevailing party to obtain attorney's fees in certain limited situations.

In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit,

including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

§ 77k(e).

The original claims in this case were brought for violations of 15 U.S.C. § 77q. Following entry of a default judgment, United States Magistrate William F. Hall, Jr. issued a Report and Recommendation on the question of damages on May 2, 1983. He found that there was no merit to the position of the defendants in this litigation and that plaintiff was, thus, entitled to an award of fees under § 77k. On May 24, 1983, this court adopted Magistrate Hall's Report and Recommendation in its entirety. Therefore, plaintiff may recover the reasonable costs and attorney's fees accrued in the prosecution of this action.

However, plaintiff's fee petition raises the question of what fees and costs should be awarded under 15 U.S.C. § 77k. Although this court's final judgment for plaintiff was entered on May 24, 1983, and the defendant's appeal was dismissed by the Court of Appeals for the Third Circuit in August 1983, plaintiff has submitted itemized time sheets for plaintiff's attorneys' efforts to execute on the judgment of this court during late 1983. The question which this court must now address is whether plaintiff may recover under 15 U.S.C. § 77k for attorney's fees related to the execution of a money judgment obtained for a violation of § 77q.[1]

There are no reported cases under § 77k discussing the availability of attorney's fees for actions taken in the execution of a judgment. This is, most likely, due to the fact that fee petitions are normally submitted immediately after the final judgment has been filed in the action, at which time the costs of execution are normally only a minor portion of the attorney's fees of the plaintiff. However, in the present case, it was necessary for plaintiff to resubmit the fee petition twice due to defects in earlier versions of the petition. With each amendment, attorney's fees for the time from the submission of the last fee petition were added to the fee request. Therefore, the fee petition in this action now lists almost 45 hours of attorney time which were devoted to the execution of the judgment. Most of this time was spent in arranging the sale of a seat on the Philadelphia Stock Exchange owned by defendant.

The only cases which this court has discovered which relate to the right to attorney's fees for post-judgment work are easily distinguishable from the present action. For example, one court has allowed plaintiffs in civil rights actions to recover fees under 42 U.S.C. § 1988 for time spent in supervising compliance with a court injunction. *Stenson v. Blum*, 512 F.Supp. 680 (S.D.N.Y.1981). However, 42 U.S.C. § 1988 was enacted to encourage private "attorneys general" to bring suits to curb civil rights violations. Thus, it is consistent with congressional policy to award fees for post-judgment activities which help to assure that those constitutional violations do not continue. It is not apparent that congressional policies of the same magnitude are vindicated by efforts to execute on a money judgment.[2]

---

**1.** Plaintiff has also requested a fee award for the costs of prosecution of a motion for contempt in late 1983. Although these activities were indirectly related to the execution of the money judgment against defendant, they will be discussed separately since the fee request for the motion for contempt is based upon a nonstatutory claim to fees, not the Securities Act of 1933.

**2.** The fee award in *Stenson* for post-judgment activities was primarily for attorney time expended in conjunction with a motion to hold defendant in contempt of court. As discussed

The only other situation which this court has discovered in which a fee award encompassed post-judgment activities other than appeal is in a case such as *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976). In that case, the court awarded fees for the time spent by the attorneys in winding up settlement administration. 540 F.2d at 121. However, unlike the present case, the fee award in *Lindy* was made under the court's general equitable powers based upon the benefit which the attorneys conferred upon a large class of persons. Because the fee award was predicated upon benefit to a class, it was only appropriate that the fee award compensate the attorneys for time spent in distributing the settlement to the members of that class.

Thus, this court has found no cases similar to the present action in which fees have been awarded for time spent in the execution of a money judgment. This fact alone may not preclude such a fee award; but it suggests that the separate proceedings related to execution of a judgment should be treated differently from the original action for fee award purposes unless there are strong policy reasons supporting a fee award for the costs of execution.

■ Viewed in this light, routine inclusion in the calculation of attorney's fees awarded under 15 U.S.C. § 77k, of the time spent in the execution of the judgment would be inappropriate. This conclusion stems from the obviously limited nature of the attorney's fees provision in § 77k. Fees are only available when the court believes that the suit or the defense was "without merit." In fact, the court must make a specific finding that the suit or the defense was meritless or otherwise frivolous. The mere fact that the party seeking fees prevailed in the action does not warrant a fee award. *See e.g., Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468 (2d

Cir.1975); *Klein v. Shields & Co.*, 470 F.2d 1344 (2d Cir.1972).

■ Thus, the attorney's fee provision of § 77k is not designed primarily as incentive for private "attorneys general" to bring suit. It was intended to allow fee awards in a much narrower set of circumstances than such statutes as 42 U.S.C. § 1988. Section 77k is more clearly directed to deterrence of frivolous suits; to quick resolution of suits to which there are no valid defenses; and to deterrence of bad faith, or meritless defenses to actions brought under the Securities Act of 1933.

This characterization of § 77k is supported by the legislative history of the 1934 amendments to the Securities Act of 1933 which added the fee provision. The conference report on the amendments stated that the fee award provision was intended "as ... a defense against purely contentious litigation on the part of the defendant" and to allow a court to "assess costs against the plaintiff if his suit had no merit or against the defendant if his defense had none." H.R.Rep. No. 1838, 73d Cong., 2d Sess. 42 (1934).

The punitive nature of the fee provision of § 77k indicates to this court that fees should not be awarded for activities after the close of the action such as the separate proceedings involved in execution on a money judgment unless the defendant's bad faith, meritless or frivolous actions have in some way caused the added costs of execution. A fee award for plaintiff under § 77k was appropriate for the costs of the original action due to the clear lack of merit and frivolous nature of the defenses raised. However, there has been no evidence presented to this court that defendant's bad faith actions have in any way extended to the execution process. On the contrary, to this court's knowledge from its involvement with the sale of the stock exchange seat (for which most of the fees are claimed), the costs of execution were mainly due to the unique nature of the property

later in this Memorandum, fee awards for prevailing plaintiffs are much more common in

actions for contempt.

being sold to satisfy the judgment. Although defendant may be indirectly responsible for these costs due to his lack of liquid assets with which to satisfy the judgment, defendant's actions during the execution on the judgment in this case cannot be characterized as "bad faith, frivolous or meritless" so as to fall within the provisions of § 77k.

Plaintiff suggests no other statutory or nonstatutory basis for a fee award for the time spent in executing the judgment. Since this time is not compensable under § 77k, there is no basis for requiring defendant to compensate plaintiff for these costs. Thus, under 15 U.S.C. § 77k, this court will only award reasonable attorney's fees to plaintiff for the prosecution of this action through the final judgment, including the costs imposed by the meritless appeal filed by defendant.[3]

### 2) *Attorney's Fee Award for Contempt Proceedings*

■ Plaintiff has also requested that this court require defendant to pay plaintiff's attorney's fees related to plaintiff's motion to hold defendant in contempt of court. At a hearing on December 12, 1983, this court determined that defendant should be held in civil contempt and that certain transactions entered into by defendant in violation of an earlier court order should be set aside. That decision was reflected in an order filed on December 16, 1983.

In the motion for contempt, plaintiff moved that this court award attorney's fees to plaintiff if plaintiff proved successful on the motion. At the close of the hearing on the contempt motion, plaintiff was granted a limited time in which to prepare a motion for fees which itemized the time spent on the motion and which set forth the legal basis for the fee award. The plaintiff filed that motion for fees on December 22, 1983. Defendant has since filed a memorandum in opposition to this fee request. That memorandum does not suggest that plaintiff is not entitled to a fee award but merely argues that certain items listed in the fee petition are not recoverable as part of the fee award.

It is well settled in this circuit that "[i]n a contempt proceeding, the court may, in its discretion, award expenses, costs, and fees to the petitioner. These items are restricted to reasonable amounts incurred in prosecuting the petition." *Lichtenstein v. Lichtenstein*, 425 F.2d 1111 (3d Cir. 1970). Such a fee award is made under the court's general equitable powers. The availability of fees in these circumstances was recently reaffirmed by the Court of Appeals for the Third Circuit in *International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Association*, 660 F.2d 76 (1981).[4] Therefore, plaintiff's motion for fees with respect to the motion and proceedings to hold defendant in contempt of court will be granted and defendant will be ordered to pay the reasonable attorney's fees incurred by plaintiff related to that motion.

■ Defendant argues that plaintiff should not receive an attorney's fee award for all the time spent in preparation and presentation of the motion for contempt because plaintiff's motion was only partially successful. The motion for contempt requested that this court set aside two

---

**3.** Although the time spent on the execution of the judgment is not neatly separated from the time spent on the prosecution of the original action or the time spent on the contempt proceedings, it is possible from the detailed descriptions in the time sheets submitted by plaintiff to identify those hours spent on the execution process. These are listed in Appendix A to this Memorandum and total 44.9 hours.

**4.** In this decision, the Court of Appeals left open the question whether a fee award would be appropriate where the contempt of court had not been willful. 660 F.2d at 84. *See Cook v. Ochsner, Foundation Hospital*, 559 F.2d 270, 272 (5th Cir.1977) (willfulness of the violation of the court's order is irrelevant to the availability of fees). Defendant has not suggested to this court that the violation of this court's order relating to the transfer of assets or property owned by defendant was not willful.

transactions involving mortgages on real property owned by defendant at 1010 Wyndon Avenue, Bryn Mawr, Pennsylvania. Following a hearing on the motion, this court found that only one of the transactions had been in violation of this court's injunction of November 19, 1982. Thus, although defendant was held in civil contempt, the motion for contempt was not entirely successful.

A fee award for prosecution of a motion for contempt is designed to repay the moving party for the costs of securing the contemnor's compliance with the court's order. *Thompson v. Johnson,* 410 F.Supp. 633, 643 (E.D.Pa.1976). Therefore, plaintiff should not be compensated for efforts which did not result in a finding that defendant had violated an order of the court.[5]

In the present case, this court found that defendant had violated this court's November 1982 injunction when defendant executed a third mortgage on the real property at 1010 Wyndon Avenue. Thus, plaintiff should be awarded attorney's fees incurred for the portion of the motion involving the third mortgage. However, costs related to the portion of the motion which sought to set aside the assignment of the second mortgage on the property at 1010 Wyndon Avenue should not be compensable since that transaction was not found to have violated this court's order.

Plaintiff's time sheets for the investigation and prosecution of the motion for contempt do not distinguish time spent on the successful portion of the motion from that spent on the unsuccessful portion. Because the motion was prosecuted as a whole, such figures do not exist. However, from this court's knowledge of the issues raised by the motion it is possible to estimate the proportion of time which would have been spent on each portion of the motion.

The issue on which plaintiff prevailed was clearly less complex than the issue upon which plaintiff proved unsuccessful. However, a significant portion of the time spent on the motion would have been expended even if the unsuccessful arguments had not been raised. For example, time spent in developing the facts surrounding the various mortgages on defendant's residence and the legal research into the general law of contempt would all have taken approximately the same amount of time and effort whether or not the unsuccessful portion of the motion had been included. Therefore, plaintiff will be awarded 65% of the reasonable attorney's fees incurred in the preparation and prosecution of the motion for contempt.[6]

3) *Attorney's Fees for Time Spent Preparing Fee Petition*

As part of both the fee petition for the original action submitted under 15 U.S.C. § 77k and the fee petition for the contempt proceeding submitted under this court's general equitable powers, plaintiff seeks to recover for the time spent in preparation of the fee petitions. One of defendant's arguments in opposition to both motions is that time spent on such fee petitions is not compensable. As support for that proposition, defendant cites generally to the two seminal opinions in this Circuit on the issue of attorney's fees. *Lindy Brothers Builders, Inc. of Philadelphia v.*

---

5. The foregoing analysis suggests that fees should not be awarded for those portions of a motion for contempt which do not result in a finding of contempt. The same result is reached by adjusting the lodestar for all of the time spent on the motion in light of the "benefit produced for the prevailing party." *See Halderman v. Pennhurst State School and Hospital,* 533 F.Supp. 649, 654 (E.D.Pa.1982). Both formulations of the calculation assume that a party seeking fees for prosecution of a motion for contempt should not be compensated for work which does not result in a finding of contempt.

6. However, because the time spent in preparing the petition for attorney's fees for the motion for contempt would have been expended whether or not the unsuccessful portions of the motion for contempt had been presented, and because the time spent on the fee petition is easily identifiable, reasonable attorney's fees related to the preparation of the fee petition will be fully recoverable.

*American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) and 540 F.2d 102 (3d Cir.1976). However, as noted in a more recent Court of Appeals decision, *Prandini v. National Tea Co.*, 585 F.2d 47, 52–54 (3d Cir.1978), the fee award in the *Lindy* case was based upon the common fund doctrine. Thus, attorney's fees were awarded for services which benefited the fund by creating, increasing, or preserving that fund. But the time spent in connection with the fee application does not benefit the fund and, thus, should not be recoverable in a common fund case.

*Prandini* held that when the attorney's fees are statutorily authorized, as in the present case, "the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application and in the court's fee award." 585 F.2d at 53. *See McMullen v. Thornburgh*, 508 F.Supp. 1044 (E.D.Pa.1983). In addition, time spent preparing a fee application following a successful contempt motion is compensable. *Halderman v. Pennhurst State School and Hospital*, 533 F.Supp. 649 (E.D.Pa.1982). Therefore, reasonable attorney's fees incurred in the preparation of the fee petitions in the present case are recoverable.

### 4) *Calculation of the Fee Award*

■ The *Lindy* decisions, as refined by subsequent cases, specify a series of steps which the district court should take when calculating a fee award. First, the court determines the number of compensable hours spent on the case by examining the activities of counsel and deciding whether the hours expended were reasonably necessary to produce the results achieved. The court then determines the reasonable hourly rate of compensation for each attorney. The reasonable hours spent by each attorney are then multiplied by the compensation rate to arrive at the "lodestar." Finally, the lodestar figure may be adjusted to reflect the quality of the work, the contingent nature of success, or other factors.

Although a hearing may be necessary to develop the evidence upon which a fee award is to be based, such a hearing is not required if the underlying facts are presented in sufficient detail in the documentary evidence before the court and are not in dispute. *Hummel v. Brennan*, 83 F.R.D. 141 (E.D.Pa.1979). Plaintiff's fee petition presents all of the information necessary to calculate an appropriate fee award, neither party has requested an evidentiary hearing, and defendant has not identified any *facts* in dispute. Therefore, a calculation of an appropriate fee award can be made upon the evidence presented in plaintiff's petition.

### (a) *Hours Reasonably Necessary to the Task*

■ Plaintiff's fee petitions present, in great detail, the number of hours spent on particular days and the tasks performed during those time periods. The amount of detail presented is more than sufficient to satisfy the mandate of *Lindy*. Defendant suggests that plaintiff's failure to break down the hours spent in the month of April 1983 and the failure to specify the nature of the "memoranda" written in May 1983 should preclude compensation for that time.

*Lindy* teaches that
the first inquiry of the court should be into the hours spent by the attorneys— how many hours were spent in what manner by which attorneys. It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney. But without some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought.

487 F.2d at 167. The submissions challenged by defendant clearly meet these requirements.

Although the time spent in April 1983 is not partitioned into individual days and times spent on each day, the designation of 2.7 hours in the month of April spent in "various meetings and discussion of strategy by Messrs. Himes and Nolan" is sufficient to apprise this court of the type of general activity in which this time was spent and who took part in those activities.

Furthermore, although defendant states that he is unable to identify the subject of the "memoranda" written in May 1983 so as to determine whether these were reasonably necessary, this court has no such difficulty. If these entries are read in the context of the other entries for early May 1983, it is obvious that the memoranda in question were plaintiff's objections to Magistrate Hall's Report and Recommendation. Such time, if reasonable for the task, is compensable.

Plaintiff has submitted time sheets showing that 107.35 hours were spent in the prosecution of the original action. This includes the time spent investigating plaintiff's claim, drafting the complaint, obtaining a temporary restraining order and a later injunction, discussing settlement options with defendant, pursuing discovery, preparing for and presenting evidence on the issue of damages, and responding to defendant's appeal, as well as the usual strategy discussions and consultations with a client which occur during the prosecution of any civil action. Such a total appears reasonable in light of the nature of the activities in which this time was spent.

However, two deductions will be made from this total. First, fees are sought for time spent by both Mr. Nolan and Mr. Himes on four different occasions when they appeared together before this court. Although there may have been some added benefit for plaintiff to have two partners present at these times, none of these occasions required the presence of two such experienced counsel. Therefore, defendant

should only be required to compensate plaintiff for the services of one partner for these appearances. *See Halderman v. Pennhurst State School and Hospital*, 533 F.Supp. 649, 656 (E.D.Pa.1982). Accordingly, plaintiff will only receive compensation for 1 hour on October 8, 1982; .5 hours on October 11, 1982; .5 hours on October 20, 1982; and 1.5 hours on October 28, 1982.

Second, on October 12, 1982 and October 19, 1982, plaintiff claims that a total of .6 hours were spent in discussions of the proper tax treatment of the loss which led to this suit. This time, although indirectly related to the subject of this action, is not compensable as time spent "in connection with such suit" as described in 15 U.S.C. § 77k.

Plaintiff also claims 39.1 hours of attorney time for the contempt motion. This figure is very reasonable in light of the complex nature of the issues raised by the motion and of the facts underlying the motion. However, as with the time claimed for the original action, plaintiff seeks to recover for the time spent by two partners at the hearing on the motion for contempt. Since the presence of both was not reasonably necessary for the hearing, only half of the time claimed for the contempt hearing will be compensable.[7]

Finally, plaintiff seeks compensation for 26.35 hours spent in the preparation of the fee petitions for both the original action and the contempt proceeding. Although this is a significant amount of time when compared to the time expended on the other tasks in question, it is a reasonable amount of time for the preparation of two fee petitions with supporting memoranda. In fact, the time claimed is quite reasonable in light of the detail provided in the time sheets and the thoroughness of the memoranda of law. Accordingly, all of the time claimed for preparation of the fee petitions is compensable.

---

7. Of course, in keeping with the earlier ruling that plaintiff should only recover for the time spent on the successful portion of the motion, plaintiff will only be compensated for 65% of this time. This adjustment will be made after the total number of hours spent on the contempt motion is multiplied by the appropriate rates of compensation.

### (b) *Hourly Rate of Compensation*

The next step in the calculation of an appropriate fee award is the determination of the proper hourly rate for the services provided by each attorney on the case. "The value of an attorney's time generally is reflected in his normal billing rate." *Lindy*, 487 F.2d at 167. A proper billing rate may vary with the experience of the attorneys in question, their status (e.g., partner, associate), and the activities they are performing. In the present action, plaintiff states that the normal billing rate for partners at the law firm of Himes, Sanders, Bunting and Nolan during the time period in question was $100.00 per hour for out-of-court time and $125.00 per hour for in-court time. The hourly rate for associates at the firm was $75.00. Therefore, plaintiff requests that this court multiply the hours spent by Mr. Himes, Mr. Nolan, Mr. Bunting, and Mr. Sanders by the rates usually charged for partner time. Plaintiff also requests that the time spent by Mrs. Miller, an associate at the Himes firm, be multiplied by her usual hourly rate of $75.00 per hour.

These rates are quite reasonable for attorneys with the experience of those who represented plaintiff in this action. Therefore, all of the time found to be compensable earlier in this Memorandum will be multiplied by the hourly rate indicated in the fee petition.

### (c) *The Lodestar Figure*

The lodestar figure for the original action is:

| | |
|---|---|
| 99.45 hours at $100.00 per hour | $9945.00 |
| 3.8 hours at $125.00 per hour | 475.00 |
| Total | $10420.00 |

The reasonable value of attorney's fees for the motion for contempt is:

| | |
|---|---|
| 33.1 hours at $100.00 per hour | $3310.00 |
| 3.0 hours at $125.00 per hour | 375.00 |
| Total | $3685.00 |

This figure should be multiplied by .65 as noted above due to plaintiff's partial success on the motion for contempt. Thus, the lodestar figure for the motion for contempt is:

$3685.00 × .65 = $2395.25

The lodestar figure for the fee petitions is:

| | |
|---|---|
| 2.8 hours at $100.00 per hour | $ 280.00 |
| 23.55 hours at $75.00 per hour | $1766.25 |
| Total | $2046.25 |

Thus, the total lodestar for all of plaintiff's fee petitions is $14,861.50.

### (d) *Adjustments to the Lodestar*

The final step in the *Lindy* process for calculating an attorney's fee award is to adjust the lodestar figure to reflect the quality of the work, the contingent nature of success, or other factors which the court finds relevant in light of the particulars of the litigation. Plaintiff does not request any adjustment based upon the contingent nature of the work. Plaintiff also notes that the nature of the legal work performed in the original action was "on the whole routine." However, plaintiff requests that this court adjust the lodestar figure upward to reflect the speed with which the result was achieved, the unique work performed by counsel in creating a fund from the sale of a seat on the Philadelphia Stock Exchange, and the resourcefulness and aggressiveness of counsel in prosecuting the contempt motion.

It is this court's assessment that the present action did not call for unique legal skills. The issues raised and the procedural steps taken in pressing the basic claim were quite straightforward. Although plaintiff's counsel did chart new territory in the sale of the stock exchange seat, an adjustment for counsel's inventiveness in these efforts is not appropriate in view of the earlier decision that attorney's fees should not be awarded for such post-judgment activities. Finally, the portion of the motion for contempt in which plaintiff proved successful was not particularly difficult to understand or present. The fee award for plaintiff's counsel's efforts on the contempt motion is itself designed to

reward counsel's resourcefulness in identifying contumacious conduct and bringing it to the attention of the court. No further adjustment is appropriate for any unique circumstances in the present action. Accordingly, in an order accompanying this memorandum, plaintiff will be awarded $14,861.50 in attorney's fees.

Plaintiff also seeks compensation for $1359.67 in costs associated with the original action. Defendant does not dispute plaintiff's right to recover such costs or the amounts plaintiff claims. Since plaintiff is entitled to costs under 15 U.S.C. § 77k, in an order accompanying this memorandum, plaintiff will be awarded the full amount of costs requested.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby ORDERED that defendant shall pay plaintiff's reasonable attorney's fees and costs related to the original action and the motion for contempt in the above-entitled action in a total amount of $16,221.17.

APPENDIX A

Time Spent in Execution of the Money Judgment—Noncompensable

| Date | Time Spent and Rate | Fee petition page | entry |
|---|---|---|---|
| 7/7/83 | 1.0 hour at $100 per hour | 19 | 6 |
| 7/15/83 | .3 hour at $100 per hour | 19 | 8 |
| 7/26/83 | .3 hour at $100 per hour | 20 | 2 |
| 8/19/83 | .3 hour at $100 per hour | 22 | 4 |
| 9/20/83 | .1 hour at $100 per hour | 23 | 1 |
| 9/20/83 | 1.0 hour at $100 per hour | 23 | 2 |
| 9/23/83 | .3 hour at $100 per hour | 23 | 4 |
| 9/23/83 | .3 hour at $100 per hour | 23 | 5 |
| 10/4/83 | .3 hour at $100 per hour | 23 | 6 |
| 10/5/83 | .1 hour at $100 per hour | 24 | 1 |
| 10/ /83 | .3 hour at $100 per hour | 24 | 2 |
| 10/17/83 | .3 hour at $100 per hour | 24 | 3 |
| 10/25/83 | 2.0 hours at $100 per hour | 24 | 4 |
| 10/25/83 | 3.0 hours at $125 per hour | 24 | 5 |
| 10/25/83 | .3 hour at $100 per hour | 24 | 6 |
| 10/26/83 | .3 hour at $100 per hour | 24 | 7 |
| 10/27/83 | .3 hour at $100 per hour | 25 | 1 |
| 10/27/83 | .3 hour at $100 per hour | 25 | 2 |
| 10/27/83 | .3 hour at $100 per hour | 25 | 3 |
| 10/27/83 | .3 hour at $100 per hour | 25 | 4 |
| 10/27/83 | .3 hour at $100 per hour | 25 | 5 |
| 10/31/83 | .3 hour at $100 per hour | 25 | 6 |
| 10/31/83 | .3 hour at $100 per hour | 26 | 1 |
| 11/1/83 | .1 hour at $100 per hour | 26 | 2 |
| 11/3/83 | .3 hour at $100 per hour | 26 | 3 |
| 11/3/83 | .3 hour at $100 per hour | 26 | 4 |
| 11/4/83 | .3 hour at $100 per hour | 26 | 5 |
| 11/7/83 | .3 hour at $100 per hour | 27 | 1 |

| Date | Time Spent and Rate | page | entry |
|---|---|---|---|
| 11/7/83 | .3 hour at $100 per hour | 27 | 2 |
| 11/8/83 | .5 hour at $100 per hour | 27 | 3 |
| 11/9/83 | .3 hour at $100 per hour | 27 | 4 |
| 11/10/83 | .3 hour at $100 per hour | 27 | 5 |
| 11/10/83 | .3 hour at $100 per hour | 27 | 6 |
| 11/10/83 | .3 hour at $100 per hour | 28 | 1 |
| 11/18/83 | .1 hour at $100 per hour | 28 | 2 |
| 11/28/83 | .1 hour at $100 per hour | 28 | 3 |
| 11/28/83 | .3 hour at $100 per hour | 28 | 4 |
| 11/28/83 | .3 hour at $100 per hour | 28 | 5 |
| 11/28/83 | .3 hour at $100 per hour | 28 | 6 |
| 11/28/83 | .75 hour at $100 per hour | 28 | 7 |
| 11/28/83 | .75 hour at $100 per hour | 29 | 1 |
| 11/29/83 | 1.0 hour at $100 per hour | 29 | 2 |
| 11/29/83 | 1.0 hour at $100 per hour | 29 | 3 |
| 11/30/83 | .3 hour at $100 per hour | 29 | 4 |
| 11/30/83 | .5 hour at $100 per hour | 29 | 5 |
| 11/30/83 | .3 hour at $100 per hour | 29 | 6 |
| 11/30/83 | .3 hour at $100 per hour | 29 | 7 |
| 11/30/83 | 5.9 hours at $100 per hour | 30 | 1 |
| 11/30/83 | .5 hour at $75 per hour | 30 | 2 |
| 11/30/83 | .3 hour at $75 per hour | 30 | 3 |
| 11/30/83 | .3 hour at $75 per hour | 30 | 4 |
| 12/1/83 | 1.0 hour at $100 per hour | 30 | 5 |
| 12/1/83 | .3 hour at $100 per hour | 31 | 1 |
| 12/1/83 | .3 hour at $100 per hour | 31 | 2 |
| 12/1/83 | 8.3 hours at $75 per hour | 31 | 3 |
| 12/1/83 | .3 hour at $75 per hour | 31 | 4 |
| 12/1/83 | 1.0 hour at $75 per hour | 31 | 5 |
| 12/2/83 | 5.1 hours at $75 per hour | 31 | 6 |

Total Hours  44.9