**In the Matter of Application to Adjudge TRINITY INDUSTRIES, INC., in Civil Contempt.**

**No. Misc–J–83–131–12.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 18, 1987.

James L. Stine, Michael K. Hagan, U.S. Dept. of Labor, Atlanta, Ga., Dorothea Beane, Jacksonville, Fla., for petitioner.

Robert E. Rader, Jr., Frederick W. Addison, III, Rader, Addison & Story, P.C., Dallas, Tex., Corbin & Dickinson, Peter Reed Corbin, Jacksonville, Fla., for defendant Trinity.

## ORDER GRANTING EXPENSES TO THE SECRETARY OF LABOR

MELTON, District Judge.

On July 20, 1987, this Court entered judgment holding respondent, Trinity Industries, Inc. ("Trinity"), in civil contempt for refusing to honor a search warrant presented at Trinity's Jacksonville Facility by a compliance office of the Occupational Safety and Health Administration (OSHA). The terms of the order adjudging Trinity in contempt provided that in order to purge itself of the contempt Trinity is directed to permit inspection and to pay the expenses of petitioner, the Secretary of Labor, incurred in the litigation of this matter. Jurisdiction has been retained over this cause to determine the propriety of awarding expenses in the form of attorney fees to the Secretary. The Court ordered the submission of memoranda on the matter.

The Secretary filed a Memorandum in Support of Award of Expenses Incurred on July 29, 1987. Trinity filed its response on August 11, 1987. The Secretary additionally filed, by leave of the Court, a reply brief on September 25, 1987.

The Secretary seeks an award of expenses for the full course of the litigation. The Secretary's requested award is calculated on the basis of direct and indirect operational costs associated with each attorney who participated on the Secretary's behalf. These figures produce an hourly rate designed to approximate the hourly rate method of billing used in private law practice.

Trinity opposes the Secretary's requested award on three grounds. First, Trinity claims that it pursued this litigation in good faith based on prevailing case law at the time so that an award would be inequitable. Second, Trinity notes that it prevailed before this Court on the discovery issue until the Eleventh Circuit ruled to the contrary

in *Donovan v. Mosher Steel Co.*, 791 F.2d 1535 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987). Last, Trinity argues that the Secretary's figures are exaggerated or inflated and calculated by reference to an unfair method.

The weight of authority clearly supports the Court's authority to award expenses in the form of attorney fees to the Secretary. *See Donovan v. Burlington Northern, Inc.*, 781 F.2d 680 (9th Cir.1986); *Donovan v. Hackney, Inc.*, 769 F.2d 650 (10th Cir. 1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986); *Donovan v. Enterprise Foundry, Inc.*, 751 F.2d 30 (1st Cir.1984); *Matter of St. Charles Manuf. Co.*, 663 F.Supp. 310 (N.D.Ill.1987). Although the Eleventh Circuit has not ruled on this issue in the context of an OSHA inspection, binding precedent establishes the availability of an award of attorney expenses to the government in a civil contempt action.[1] *Northside Realty Assocs., Inc. v. United States*, 605 F.2d 1348, 1356 n. 23 (5th Cir.1979) (violation of injunction regarding housing discrimination); *NLRB v. Johnson Manuf. Co. of Lubbock*, 511 F.2d 153, 158 (5th Cir.) (violation of court order enforcing NLRB cease and desist order), *cert. denied,* 423 U.S. 867, 96 S.Ct. 130, 46 L.Ed.2d 97 (1975). The decision to award expenses is discretionary and depends on a close analysis of the particular case for a determination whether an award of fees and expenses is an appropriate remedial measure. *Burlington Northern,* 781 F.2d at 683; *Hackney,* 769 F.2d at 654.

■ The Court finds that this case presents facts for which an award of fees and expenses is appropriate as a remedial measure. Trinity refused to honor a warrant later determined to be valid. This action placed Trinity in civil contempt. Trinity's good faith, standing alone, does not immunize its conduct. *Burlington Northern,* 781 F.2d at 683; *Hackney,* 769 F.2d at 654; *Enterprise Foundry,* 751 F.2d at 38. This finding, however, does not create an entitlement to all expenses involved in this action. Compensatory civil contempt "includes losses flowing from noncompliance and expenses *reasonably and necessarily incurred* in the attempt to enforce compliance." *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir.1976) (emphasis added); *accord Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 458 (11th Cir.1984). Thus, the decision regarding the amount of fees also falls within the equitable discretion of the Court. *Sizzler Family Steak Houses v. Western Sizzlin Steak,* 793 F.2d 1529, 1534–35, *reh'g denied,* 797 F.2d 982 (11th Cir.1986); *Cook v. Ochsner Foundation Hospital,* 559 F.2d 270, 272–73 (5th Cir.1977) (describing nature of compensatory civil contempt).

■ The Court's consideration of the equities leads to the conclusion that Trinity should not be charged with the Secretary's expenses for the period prior to the Eleventh Circuit's decision in *Mosher Steel.* This Court's order dated March 28, 1985, substantially supported Trinity's decision to challenge the warrant in court. Because the Eleventh Circuit had accepted *Mosher Steel* to decide identical issues, this Court stayed the March 28, 1985, order. The Eleventh Circuit's decision in *Mosher Steel* required that this Court reexamine the issues in the present litigation, leading to Trinity's adjudgment of civil contempt.

It may be true that "[r]esistance to a valid warrant need not be without financial risk even in a free society." *Burlington Northern,* 781 F.2d at 684. Moreover, as stated previously, Trinity's good faith in resisting the warrant does not determine the fact or level of compensation due in civil contempt. *See Cook,* 559 F.2d at 272. Yet this case involves more than good faith; Trinity won "battles" before losing the "war" to the Secretary. The significance of Trinity's victories should not be overlooked. The Secretary's expenses incurred in opposition to the proceedings at that point did not lead to the ultimate disposition of this suit. Rather, the fortuitous

---

1. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

timing of an appellate court decision removed a serious impediment to the Secretary's enforcement action.

The inequity of taxing Trinity for expenses when it had succeeded in the first instance appears manifest. Although the Secretary expended considerable resources opposing Trinity's motions, progress was achieved largely by the Secretary's efforts in a separate case. Then, on the authority of that ruling, the Secretary proceeded to find success in this case. The expenses "reasonably and necessarily incurred" in obtaining enforcement of the warrant truly began following *Mosher Steel*. The Secretary should not receive compensation for efforts prior to that time because those efforts did not result in the finding of contempt. *LeMaster v. Bull*, 581 F.Supp. 1170, 1175 & n. 5 (E.D.Pa.1984).

The nature of the underlying proceeding here also colors the Court's judgment. Unlike traditional contempt situations, Trinity's contempt stems from violation of an *ex parte* order, the warrant, that could be challenged only by provoking the contempt proceedings. The procedural posture does not excuse or immunize Trinity's conduct, but it does weigh in Trinity's favor given the temporal success Trinity enjoyed in the proceeding.

The terms of this ruling, therefore, substantially reduce the expenses available to the Secretary. Based on the affidavits submitted, the relevant figures are:

ATTORNEY FEES

Michael Hagan

1986 – 0.8 hours @ $20.41/hr.

1987 – 22.0 hours @ $21.03/hr.

James L. Stine

1986 – 0.2 hours @ $28.36/hr.

1987 – 44.4 hours @ $29.22/hr.

EXPENSES

Indirect Operations

1986 – 1.0 hour @ $4.51/hr.

1987 – 66.4 hours @ $5.39/hr.

Rent

1986 – 1.0 hour @ $1.42/hr.

1987 – 66.4 hours @ $1.26/hr.

Travel

1987 – Stine (May 15) – $248.87

These totals represent the Secretary's request within the parameters permitted by the Court. The attorney fee award, however, must be evaluated for reasonableness. *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 273 (5th Cir.1977).

The twelve factors used to evaluate the reasonableness of attorney fees awards are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fees; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974).

The *Johnson* factors fit awkwardly with a request by a government agency for attorney fees.[2] One circuit court of appeals avoided this awkwardness by concluding that the government's detail of hours expended and related hourly rate ($14.57 per hour) seemed reasonable as a whole. *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 786 & n. 14 (7th Cir.1981). The Eleventh Circuit also has loosely evaluated attorney fees awards sought by government agencies. *See, e.g., Stubbs v. Commissioner*, 797 F.2d 936, 939 (11th Cir.1986) (approving $1,185 award of attorney fees for IRS in frivolous tax case appeal, without requiring affidavit on hours and rate, because amount compared favorably to average award in such cases).

---

**2.** Since *Johnson* developed these criteria in the context of a civil rights attorney fees statute that excludes the government by its terms, this awkwardness is not surprising. *See* 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party, *other than the United States,* a reasonable attorney's fee").

The Court discerns that control must be exercised over the Secretary's requested attorney fees, but the level of control need not be as great as requests from private counsel. In particular, the Court need not concern itself with factors related to enhancing or deflating an award, or the incentives to take a case on behalf of a client. Rather, the reasonableness inquiry should focus on the work performed and the rate at which the government values the time of the attorneys involved. Initially, the Court should consider the government's claim of time expended in the matter. This evaluation would address the time actually claimed, the novelty and difficulty of the questions involved, the amount or stakes involved, and the results obtained. Subsequent to the determination of time expended, the Court should establish the reasonable value of the services of the government attorneys (and other personnel, if necessary). One substantial difficulty posed at this stage is the lack of an objective lodestar (*e.g.*, prevailing market rate) by which to measure the government's claim of value. Thus the Court must rely upon figures supplied by the government, applying principles of fairness and commonsense to the amount provided.

Regarding the first step, the Court finds the hours claimed by the Secretary for the period following *Mosher Steel* to be reasonable. The issues litigated merited the substantial expenditure of time which the Secretary claims. A review of the affidavits submitted on the Secretary's behalf dispels any notion that the efforts of the Secretary's attorneys were duplicative or wasteful. The Court has considered Trinity's broad attack on the reasonableness of the Secretary's claim for attorney fees, but that attack is unconvincing. The Court has adjusted for the Secretary's unfavorable position in the early stages of the litigation. The remainder of Trinity's criticism is too vague to apply to the request, as modified, so the Court relies on the judgment that the hours appear appropriate for the issues litigated, the stakes involved, and the results obtained.[3]

The Court preceives problems in the Secretary's claimed rate for the value of attorney services. The Secretary's rate falls between $25 and $35 per hour, depending on the attorney and that attorney's compensation in a particular year. Although the Court recognizes that a rate from 1981 is not strictly comparable, it is noteworthy that the Seventh Circuit Court of Appeals awarded attorney fees to a government agency at a rate slightly less than $15 per hour. *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 786 & n. 14 (7th Cir.1981) ($14.57/hr). This vast difference leads the Court to scrutinize more closely the Secretary's claimed rate. The Secretary seeks four elements in the total hourly rate for attorney expenses: (1) salary costs, reduced to an hourly rate; (2) value of benefits such as earned annual and sick leave; (3) the hourly rent per employee, on an hourly basis, for the Secretary's Solicitor's Office; and (4) indirect operational costs per employee, on an hourly basis, for the Secretary's Solicitor's Office.

Salary costs at an hourly rate provide a reasonable basis for valuing the time of the Secretary's attorneys. Because government salary translates into an hourly rate that is approximately one-fourth to one-third of prevailing private attorney fees, the temptation to declare the figures reasonable per se is powerful. The Court resists this temptation. The award of attorney fees is designed to compensate, so it must approximate without exceeding the Secretary's actual costs of litigation. For this particular case, the figures submitted for salary costs appear to meet this standard.

---

**3.** The "results obtained" aspect of fee reasonableness has double significance. If the Court were not able to exercise its discretion to limit the hours compensated for the civil contempt, the Court would adjust downward the value of attorney fees rate claimed by the Secretary in proportion to the hours expended on unsuccessful aspects of the case, *see LeMaster*, 581 F.Supp. at 1175 n. 5, or the Court would disallow the hours as time spent on a distinct, unsuccessful claim by the Secretary, *see Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed. 2d 40 (1983).

In contrast, the claim for benefits, rent, and indirect operational expenses does not permit a basis for linking the Secretary's cost of litigation to the fee award. These items were not accrued at the rate sought for the hours claimed. It is inappropriate to analogize these items to the overhead which private law firms take from their markup in the billing rate. Private law firms contain overhead expenses within a framework of client billable work. The government incurs these expenses without regard to the decision to pursue a particular matter. Arbitrary assignment of a portion of these costs to the suit against Trinity would breach principles of fairness.[4] These expenses were not necessarily incurred in the suit to adjudge Trinity in contempt and therefore are not compensable.

The Court and counsel apparently agree that attorney fees disputes are "one of the least socially productive types of litigation imaginable." *Hensley v. Eckerhart*, 461 U.S. 424, 442, 103 S.Ct. 1933, 1943, 76 L.Ed. 2d 40 (1983) (Brennan, J., dissenting in part). The Court has endeavored here to simplify the analysis for evaluating fees requests by government agencies, perhaps with the salutory effect of reducing the burden imposed by future fees requests. Trinity's objections facilitate this task. To state more directly, more simply what has been developed here, judicial evaluation of government attorney fees requests proceeds in three stages. The Court initially reviews the reasonableness of the number of hours claimed for legal personnel and, where appropriate and particularized to the litigation in question, support personnel. Several *Johnson* factors work well for this evaluation, notably the factors dealing with the novelty and difficulty of the questions involved, the amount or stakes involved, and the results obtained. At the second stage the Court determines the reasonable

value of the legal services provided to the government. For this inquiry, a presumption of reasonableness attaches to the hourly rate derived from the annual salary of the attorney(s) (or support personnel) involved.[5] Of course, the final stage simply requires that the Court multiply the reasonable number of hours times the reasonable hourly rate for the value of the government's legal services. *Cf. Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (product of reasonable hours times reasonable rate guides most private attorney fees determinations).

Based on the foregoing analysis, the Court finds the Secretary entitled to the following items as expenses:

ATTORNEY FEES

| | |
|---|---|
| Michael K. Hagan | $ 478.98 |
| James L. Stine | 1,303.03 |

EXPENSES

| | |
|---|---|
| Travel (Stine) | 248.87 |
| TOTAL | $ 2,030.88 |

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. That petitioner, the Secretary of Labor, is hereby awarded $2,030.88 in attorney fees and related expenses incurred in the litigation of this matter;

2. That respondent, Trinity Industries, Inc., shall pay the award of attorney fees to petitioner within ten (10) days from the date of this order; and

3. That this order is hereby made subject to the temporary stay granted pursuant to the Order Denying Application for Stay Pending Appeal, entered September 21, 1987.

---

**4.** This is not to say, however, that paralegal or administrative costs for which the government can produce time records attributing the expense to this suit will not be considered. Particularized charges do not transgress the notions of fairness which govern the determination of reasonableness.

**5.** Factors related to fee enchancement and incentives to litigate are not relevant to a government attorney fees award because government litigation does not rise and fall by the same risks and incentives that motivate and inhibit private litigation.