SERVICE FOUNDRY CO., INC., Plaintiff-Appellee,

v.

Raymond J. DONOVAN, Secretary of Labor, et al., Defendants-Appellants.

No. 82–3634.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1983.

---

5.  Tex.Bus. & Comm.Code § 2.703.

6.  Tex.Bus. & Comm.Code § 2.609.

**494**

Andrea C. Casson, Dennis K. Kade, U.S. Dept. of Labor, Washington, D.C., for defendants-appellants.

Horace A. Thompson, III, Susan L. Brooks, New Orleans, La., for plaintiff-appellee.

Elizabeth M. Williams, New Orleans, La., for Amicus-So. States Legal Center.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Raymond J. Donovan, Secretary of Labor (the Secretary), appeals an order of the United States District Court for the Eastern District of Louisiana quashing the portion of an administrative inspection warrant authorizing Occupational Safety and Health Administration (OSHA) inspectors to use personal sampling devices attached to Service Foundry's employees to inspect a steel and bronze castings plant. The district court held that the rule pursuant to which the magistrate issued the warrant had not been properly promulgated, and that, in any event, the OSHA enabling statutes do not authorize inspectors to use personal sampling devices.

During the pendency of this appeal, OSHA re-promulgated the rule under which the warrant was issued using proper notice and comment procedures. Consequently, the only issue before this court is whether personal sampling devices attached to company employees are a reasonable method of inspection within the meaning of the OSHA enabling statutes. Because we hold that the use of the devices is reasonable, we reverse the order of the district court quashing the part of the warrant authorizing use of the devices.

I.

Congress passed the Occupational Safety and Health Act of 1970 (the Act), codified at 29 U.S.C. §§ 651–678, to assure safe and healthful working conditions for the nation's work force and to preserve the nation's human resources. 29 U.S.C. § 651(b) (1976). Toward that goal, the Act authorizes the Secretary of Labor:

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other work area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

*Id.* at § 657(a).

The Act also authorizes the Secretary along with the Secretary of Health and Human Services to "prescribe such rules and regulations as he may deem necessary to carry out their [sic] responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment." *Id.* at § 657(g)(2).

Pursuant to this rule-making authority, in 1971 the Secretary promulgated regulations for implementing the inspection provisions of the Act.[1] Included among the implementing regulations was 29 C.F.R. § 1903.7, which, in relevant part, says:

(b) Compliance Safety and Health Officers shall have authority to take environmental samples and to take or obtain photographs related to the purposes of the inspection, employ other reasonable investigative techniques, and question privately any employer, owner, operator, agent or employee of an establishment. . . .

---

**1.** 36 Fed.Reg. 17850 (Sept. 4, 1971).

(c) In taking photographs and samples.... Compliance Safety and Health Officers shall comply with all employer safety and health rules and practices at the establishment being inspected, and they shall wear and use appropriate protective clothing and equipment.

29 C.F.R. § 1903.7(b) and (c) (1971).

Although the agency's regulations did not mention personal sampling devices specifically, the first OSHA Compliance Operations Manual, issued in 1972, and its succeeding operations manuals issued in 1974 and 1980 noted that use of personal sampling devices is the preferable and most reliable method of inspecting workplaces for noise or toxic air contaminants.[2] A personal sampling device is a small meter or air pump that attaches to an employee's clothing to measure the level of noise or contaminants immediately surrounding the employee. It does not measure or monitor the employee physically or require the employee to record data or make any interpretive judgments.

Notwithstanding the established practice of using personal sampling devices, in 1981 a divided panel of the United States Court of Appeals for the Seventh Circuit, in *In re Metro-East Manufacturing Co.*, 655 F.2d 805 (7th Cir.1981), held that section 1903.7 of the Code of Federal Regulations authorizing OSHA officers to take environmental samples and use other reasonable techniques of investigation did not give employers "fair warning" that an OSHA inspection may entail employees' wearing personal sampling devices.

In response to *Metro-East,* the Secretary issued an interpretive ruling in February of 1982, explicitly stating that use of personal sampling devices is a reasonable method of inspection.[3] The Secretary also published a notice proposing to codify the interpretive rule and inviting interested persons to comment on the proposed rule.[4] After receiving comments and giving the proposal due administrative consideration, in December of 1982 the Secretary amended section 1903.7 expressly to authorize use of personal sampling devices.[5]

## II.

In October of 1981, OSHA scheduled a routine inspection of Service Foundry's plant in Waggaman, Louisiana. In March of 1982, OSHA attempted to carry out that inspection. Service Foundry conceded that the inspection was a proper exercise of administrative authority, but refused to allow its employees to wear OSHA's personal sampling devices.

The Secretary sought and obtained a warrant from a federal magistrate permitting the Secretary to inspect Service Foundry's plant, and specifically authorizing inspectors to affix personal sampling devices to employees *who agree to wear them.* According to the terms of the warrant, the inspection was to begin within ten days of issuance and to be completed within a reasonable time. Even after the magistrate issued the warrant, however, Service Foundry continued to refuse to allow OSHA inspectors to use personal sampling devices on its employees.

The Secretary filed a motion seeking to hold Service Foundry in contempt almost concurrently with Service Foundry's filing of a motion to quash that part of the warrant authorizing use of personal sampling devices. The district court denied the Secretary's motion and granted Service Foundry's motion on two grounds. First, it read the agency's enabling statutes and the Seventh Circuit's decision in *Metro-East* to mean that the Secretary did not have the statutory authority to allow inspectors to use personal sampling devices. Second, the district court held that the interpretive rule under which the magistrate issued the war-

**2.** See OSHA Compliance Operations Manual, Ch. XIII at 12 (1972); OSHA Field Operations Manual, Ch. XIII § N (1974); and the current OSHA Field Operations Manual, Ch. XIII § N (1981).

**3.** 47 Fed.Reg. 6530 (1982).

**4.** *Id.* at 6534.

**5.** *Id.* at 55,478–81.

rant was not really interpretive at all, but was substantive, and therefore required notice and comment rule-making procedures.

Because the Secretary re-promulgated the rule, using proper rule-making procedures, after the district court rendered its decision on appeal, Service Foundry concedes the procedural validity of this rule. *See also Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir.1977) (this court generally applies the rules and regulations in effect at the time of appeal). Consequently, we address only Service Foundry's arguments that the rule is unreasonable because it violates the allocation of information-gathering responsibility contemplated by the statutes, and that the use of personal sampling devices is unreasonable under the circumstances of this case.

### III.

We note at the outset of our discussion that no court has addressed directly the question whether the OSHA inspection-enabling statutes authorize OSHA to use personal sampling devices. Several courts, however, have upheld the reasonableness of using the devices without directly addressing the statutory authority question.[6] Thus, to the extent that the decision of the district court in this case rejected *per se* the use of personal sampling devices, it is inconsistent with relevant existing case law.

We agree with the Secretary that allowing OSHA inspectors to use personal sampling devices is reasonable within the meaning of the agency's enabling statutes. The Act specifically allows the Secretary to inspect the workplace, the work environment, the place of employment, and all pertinent conditions of employment. 29 U.S.C. § 657(a) (1976). The air an employee breathes and the noises to which he is subjected during working hours are "pertinent conditions" the Secretary may inspect.

Service Foundry argues that the Act authorizes inspectors to question employees and employers. By implication, it argues, the Secretary is limited to inspection of things and to questioning of people. He cannot, therefore, inspect people. Service Foundry argues that personal sampling devices make employees OSHA inspection agents.

We find this reasoning unsound. Personal sampling devices do not inspect people. They simply measure the environment and are more analogous to questioning employees than to inspecting them. They do not monitor the employees physiologically, and do not require any affirmative action by the employees. They in no way make employees agents of the government's inspectors.

Service Foundry further argues that to allow OSHA inspectors to affix personal sampling devices to employees upsets the balance Congress implicitly struck when it passed the OSHA inspection enabling legislation. Service Foundry points out that one section of the Act requires employers to maintain accurate records of employee exposure to toxic materials. *Id.* at § 657(c)(1) and (3). To allow OSHA to re-inspect that which the employer already has inspected, Service Foundry argues, is an unnecessary

---

6. *See United States v. Cleveland Electric Illuminating Co.,* 689 F.2d 66 (6th Cir.1982) (district court held use of personal sampling devices to be reasonable but case was moot by the time it reached circuit court); *In re Metro-East Manufacturing Co.,* 655 F.2d 805, 811 (7th Cir.1981) (company did not have fair warning that personal sampling devices are a reasonable investigative technique); *In re Keokuk Steel Castings,* 638 F.2d 42, 45–46 (8th Cir. 1981) (administrative warrant not overbroad in allowing inspectors to interview employees and to use personal sampling devices); *Deering Milliken, Inc. v. Occupational Safety & Health Review Comm'n,* 630 F.2d 1094, 1102 (5th Cir. 1980) (OSHA determination that personal sampling devices were most accurate method of measuring contaminants upheld); *Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283, 1289 (9th Cir.1979) (federal court has no authority to require an employer to rescind a rule forbidding employees to wear personal sampling devices); *American Smelting & Refining Co. v. Occupational Safety & Health Review Comm'n,* 501 F.2d 504, 513–14 (8th Cir.1974) (personal sampling devices are a scientifically acceptable manner of detecting hazardous conditions); *Ingersoll-Rand Co. v. Donovan,* 540 F.Supp. 222, 225–26 (M.D.Pa.1982) (use of personal sampling devices reasonable under 29 C.F.R. § 1903.7(b) and does not violate due process).

intrusion into the workplace and an unnecessary duplication of effort. In fact, the Act specifically states duplication of effort is undesirable. *Id.* at § 657(d).

We do not think that the devices are unnecessarily intrusive. The Secretary maintains that contaminants usually are not distributed evenly throughout the workplace, and that personal sampling devices provide the most accurate measurement of contaminants in the air immediately surrounding the employee. OSHA Field Operations Manual Ch. XIII, § N (1980). This court is not in a position to challenge that contention, especially since the record contains no contrary evidence.

As Service Foundry conceded at oral argument, the device is no more intrusive than OSHA inspectors questioning employees. In fact, the devices probably take away less production time than does questioning, which may require the employee to stop work and leave his work station. Additionally, unlike questioning, the devices do not require the employee to make subjective evaluations. In fact, Service Foundry admitted that it uses personal sampling devices itself to comply with its own legal record-keeping obligations. Service Foundry also conceded that OSHA inspectors could wear the devices themselves in the work place while conducting inspections. Affixing the device to an employee's clothing and having him wear it while he works seems much less disruptive, and probably much safer, than having the government inspector hover around the employee in close enough proximity to obtain an accurate reading of toxins or noise in the air. Finally, we simply do not agree with the unsupported contention advanced by Service Foundry during oral argument that by asking employees to volunteer to wear personal sampling devices the OSHA inspectors will offend employees and cause them to harbor hard feelings against the employer. Thus, the devices intrude only minimally into the work place, and only to the extent necessary for the Secretary to fulfill his inspection duties.

Certainly, as Service Foundry argues, allowing OSHA inspectors to affix personal sampling devices to employees may result in a duplication of effort. The duplication, if it in fact occurs, however, may be necessary duplication.

The Secretary has no obligation to accept the employer's representations as to workplace conditions. *West Point Pepperell, Inc. v. Donovan,* 689 F.2d 950, 962 n. 14 (11th Cir.1982); *Pelton Casteel, Inc. v. Marshall,* 588 F.2d 1182, 1188 (7th Cir.1978). Thus, the Secretary has a valid interest in verifying the records kept by the employer. By double-checking the employer's records, he ensures the regularity and accuracy of the employer's records and equipment. In the absence of an explicit statement to the contrary, either in the statutes or relevant legislative history, we do not believe that Congress intended to delegate environmental sampling responsibility totally to the employer and leave the agency charged with ensuring that work places are safe and healthful to rely solely on the employer's records.

Further, as occurred in the present case, the object of the warrant may challenge the search as being unreasonable under the particular circumstances. If OSHA attempts to inspect using personal sampling devices immediately after the employer has completed his own inspection, the employer is free to argue that in the given situation this factor should be considered among all of the factors in determining whether the proposed inspection is unreasonable.

Finally, we note that OSHA merely asks, and does not require, employees to wear the sampling devices. If an employee has reservations about wearing the devices, the agency's practice is to try to alleviate any concern the employee has by talking with the employee, and, if necessary, to the employer. As long as the Secretary follows this practice, we do not believe that the general practice of using personal sampling devices is unreasonable.

### IV.

The district court held that part of the OSHA search warrant authorizing use of

personal sampling devices was unreasonable under the circumstances of this case. Because in reaching this finding the district court specifically relied on an erroneous understanding of "the entire thrust of the scheme of enforcement," we must reverse the district court's holding as a matter of plain error. As explained previously in this opinion, Congress did not intend to delegate environmental testing responsibility to employers and relegate OSHA to inspecting the workplace and questioning employees. Any holding based on a conclusion to the contrary cannot be upheld.

Additionally, in granting Service Foundry's motion to quash because the circumstances of this case indicate that the use of personal sampling devices is unreasonable, the district court also erred in relying on the fact that OSHA had not shown it could not obtain the information using less intrusive inspection methods. The agency has no burden to make such a showing. As a general rule, for the agency to obtain a search warrant, the burden on the agency is to show only that the inspection is part of a general administrative plan, or if the inspection is based on facts relating to the particular establishment, the agency need show only that the facts are susceptible of being true and supported. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978); *Marshall v. Milwaukee Boiler Manufacturing Co., Inc.,* 626 F.2d 1339, 1345 (7th Cir.1980); *In re Northwest Airlines, Inc.,* 587 F.2d 12, 14 (7th Cir.1978).

■ Finally, the district court erred in placing undue emphasis on the fact that Service Foundry recently had completed, using personal sampling devices, an inspection of the places OSHA wished to inspect. As the party challenging the agency's inspection warrant, Service Foundry had the burden of proving the OSHA search unreasonable. *E.g., United States v. Southeast First National Bank of Miami Springs,* 655 F.2d 661 (5th Cir.1981) (Internal Revenue Service); *SEC v. Brigadoon Scotch Distributing Co.,* 480 F.2d 1047 (2d Cir.1973). The simple fact, standing alone, that inspection duplicates a previous inspection is not enough to satisfy this burden. *United States v. Powell,* 379 U.S. 48, 51, 85 S.Ct. 248, 251, 13 L.Ed.2d 112 (1964).

■ As explained previously, the Secretary has a substantial interest in conducting his own inspection even if duplicative. The Secretary may wish to ensure that the employer's equipment is properly calibrated, or simply may wish to verify the employer's records. Here, when Service Foundry urged unreasonableness because the OSHA inspection was duplicative of an inspection which it had recently completed, OSHA countered that it had an interest in ensuring that the employer's equipment was properly calibrated, and argued its need to verify the employer's records. Service Foundry produced no evidence to show that its situation was a special one in which duplicative inspection was unreasonable, perhaps because of harassment or for some other impermissible reason. The fact, argued by Service Foundry, that OSHA had not questioned the reliability of the employer's data, does not negate OSHA's right to duplicate the inspection. OSHA certainly need not wait until it has evidence that the employer's equipment has failed or that the records contain incorrect information in order to justify its right to *ensure* the accuracy of the employer's equipment and its records. It makes no sense to require evidence that the livestock have escaped before permitting an inspection of the barnyard gate.

V.

The decision of the district court holding that use of personal sampling devices to conduct inspections is not within the agency's statutory authority is reversed. Its decision that use of the devices is unreasonable in this particular case also is reversed. This case has been two years in litigation, and the agency has yet to conduct its inspection. Consequently, the agency should be allowed to update the warrant, and we therefore remand the case to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.