Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,

v.

ENTERPRISE FOUNDRY, INC., and John Legendre, Defendants, Appellees.

No. 84–1329.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1984.

Decided Dec. 20, 1984.

Andrea C. Casson, Atty., U.S. Dept. of Labor, Washington, D.C., with whom Francis X. Lilly, Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, and Judith N. Macaluso, Asst. Counsel for Appellate Litigation, Washington, D.C., were on brief, for plaintiff, appellant.

Steven D. Silin, Lewiston, Me., with whom Jack H. Simmons and Berman, Simmons & Goldberg, Lewiston, Me., were on brief, for defendants, appellees.

Before COFFIN, Circuit Judge, ALDRICH and COWEN,* Senior Circuit Judges.

COWEN, Senior Circuit Judge.

Plaintiff, Raymond J. Donovan, the Secretary of Labor (Secretary), appeals from a judgment of the district court, 581 F.Supp. 1433, which quashed an administrative warrant authorizing an inspection of defendants' foundry by Occupational Safety and Health Administration (OSHA) inspectors and denied plaintiff's petition to hold defendants in civil contempt. The district court held the warrant invalid because it and its attachments did not show that defendants' premises had been selected for search based on a general, neutrally derived administrative plan, and because it provided no valid basis for the use of personal air sampling devices attached to the

* Of the Federal Circuit, sitting by designation.

clothing of employees. For the reasons given, we reverse and remand.

## I.

Defendant-appellee Enterprise Foundry, Inc., (Enterprise) is a manufacturer of molded cast-iron products with a worksite located in Lewiston, Maine. Its president is defendant-appellee John Legendre. Enterprise is an employer in the category of a "high hazard" industry, as defined by OSHA. Pursuant to OSHA's Scheduling System for Programmed Inspections as described in its Field Operations Manual Instructions for Inspection Scheduling, the Enterprise workplace was chosen for inspection in late 1983. An OSHA inspection officer appeared on the Enterprise premises in the afternoon of October 13, 1983, to inspect the worksite. His inspection was first postponed until the following day, and then refused altogether by Mr. Legendre, because the officer had no warrant.

Subsequently, on November 8, 1983, the inspection officer filed an application for an inspection warrant with the local United States Magistrate. The application stated that the Enterprise workplace had been chosen for inspection in accordance with the foregoing OSHA Scheduling System, pertinent portions of which were attached thereto. The application also stated that it was made pursuant to various statutes and regulations governing OSHA, including 29 U.S.C. § 657, which sets forth the general authority and limitations of OSHA inspections, and 29 C.F.R. § 1903.7, which gives OSHA officers the authority to take environmental samples by employing sampling devices attached to employees. However, the application did not state specifically that the inspection officer intended to utilize such personal sampling devices.

On the same day, the magistrate issued the warrant requested by the inspection officer. The warrant stated that probable cause had been shown for a programmed inspection of the Enterprise worksite. It stated that pursuant to the statutes and regulations cited by the inspection officer, as well as the leading Supreme Court cases pertaining to administrative searches, OSHA compliance officers were authorized to enter the premises of Enterprise:

to conduct a health inspection during regular working hours or at other reasonable times, and pursuant to 29 CFR § 1903.7, attached hereto, to inspect and investigate in a reasonable manner and to a reasonable extent (including but not limited to the taking of photographs and area and environmental samples and personal samples by the use of personal sampling devices attached to the clothing of employees, * * * ) the workplace or environment where the work is performed by employees * * *.

Unlike the application, the warrant did not contain or have attached any of the written program information providing the standards by which Enterprise had been selected by OSHA for a site inspection.

On November 9, 1983, the inspection officer returned to the Enterprise worksite and presented the warrant to company officers. He was allowed to conduct only a 30-minute walkaround inspection that day. After consulting with counsel, the officers of Enterprise permitted him to return on November 16 to conduct a more thorough walkaround inspection, interview employees, and obtain bulk samples of work materials. However, the company still refused to permit him to attach air sampling devices to employees, stating that such devices would be burdensome to employees, would pose a potential safety hazard, and might be considered altogether unreasonable and outside the scope of OSHA statutes.

On December 2, 1983, the Secretary filed a Petition for Adjudication of Civil Contempt and Order to Show Cause with the district court. Following the district court's denial of the petition and quashing of the warrant, this appeal ensued.

## II.

The primary ground for the district court's judgment was that the warrant and its attachments did not indicate the basis for the selection of Enterprise as the target for inspection. According to the district

court, this finding was compelled by the leading Supreme Court case governing OSHA searches, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 321, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305 (1978), which holds that before a compulsory inspection can be deemed not to violate the Fourth Amendment, the government must provide:

> [a] *warrant showing* that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources. [Emphasis added by the district court.]

We think the district court misconstrued the thrust of the Supreme Court's reasoning in *Barlow's*. The concern behind the imposition of the warrant, as expressed in that case, was that:

> The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria.

*Id.* at 323, 98 S.Ct. at 1825–26.

■ The warrant requirement was therefore imposed so as to provide assurances from a neutral magistrate that an inspection would be conducted pursuant to a constitutionally sanctioned administrative plan, rather than the whims of an overly zealous inspecting officer. The mere existence of a warrant serves to satisfy this concern, because it indicates to an employer that the necessary review by a neutral official has taken place.

■ It is significant to note that in criminal cases, where stricter probable cause requirements apply than in administrative cases (*Id.* at 320, 98 S.Ct. at 1824), it is unnecessary to provide a recital of the reasons for a finding of probable cause on the face of the warrant. Such a recital had been required under Rule 41 of the Federal Rules of Criminal Procedure prior to 1972,

but was eliminated in that year as "unnecessary paper work," because "[a] person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued." Fed. R.Crim.P. 41(c) advisory committee note (1972).

■ In the instant case, as in criminal cases, defendants had access to the affidavits upon which the warrant in question was issued. If such affidavits do not provide sufficient indicia of probable cause, they can serve as the basis for a successful challenge to the warrant. *See, e.g., In re Northwest Airlines, Inc.*, 587 F.2d 12, 15 (7th Cir.1978); *Marshall v. Weyerhaeuser Co.*, 456 F.Supp. 474 (D.N.J.1978). Yet, the affidavits in this case appear to amply satisfy the administrative probable cause requirements of *Barlow's*, since they indicate that Enterprise was chosen as a target for inspection as part of a neutrally derived administrative plan. Indeed, defendants have nowhere challenged the sufficiency of these affidavits. Consequently, we find that there is no basis for invalidating the warrant on the ground that the magistrate who issued it was provided with an insufficient showing of probable cause.

We also find that the district court's reliance on this court's decision in *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1 (1st Cir.1982), is misplaced. In that case, which dealt primarily with whether the administrative or criminal standard of probable cause applied to an OSHA inspection, we stated that the necessary probable cause was shown, because:

> [t]he inspection program descriptions attached to the warrant application and to the warrant itself both described the program in detail, satisfying a specific requirement the Supreme Court seemed to impose in *Barlow's*, 436 U.S. at 323 n. 20 [98 S.Ct. at 1826 n. 20], * * * and provided enough information to show that Wollaston's selection was not arbitrary.

695 F.2d at 5. Although both the warrant and the application are mentioned in the above passage as sources of the necessary

descriptive detail, it is apparent, from both the remainder of the *Wollaston* decision and the footnote in *Barlow's* cited above, that the principal focus in determining whether a showing of probable cause was made is on the *application,* not the warrant. We did not hold that the warrant in that case would have been invalid unless it showed on its face that the premises to be inspected had been selected for an administrative search "on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources." *Wollaston* cites with approval the decision in *Stoddard Lumber Co. v. Marshall,* 627 F.2d 984 (9th Cir.1980), where the court held that the information set forth in the application for the warrant was sufficient to support the district court's finding of probable cause for the issuance of the administrative search warrant. In so holding, the court made no reference to the terms of the warrant.

The only other justification for the district court's finding as to the facial insufficiency of the warrant was the fact that an employer, confronted by the inspector with warrant in hand, must make an on-the-spot decision of whether to challenge the warrant. The court declared that without any recital of probable cause on the face of the warrant, the employer is faced with the dilemma of having no informed basis upon which to appraise the warrant's validity. We do not find, however, that such a dilemma rises to the magnitude of a denial of defendants' Fourth Amendment rights. The decision in *Barlow's,* as well as its immediate doctrinal predecessors, was arrived at from a careful balancing of society's interest in occupational health and safety with the property owners' Fourth Amendment privacy interests. *Camara v. Municipal Court,* 387 U.S. 523, 534–39, 87 S.Ct. 1727, 1733–36, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967). The result of this balancing was the imposition of the "rather minimal limitations * * [of] a warrant procedure," *See,* 387 U.S. at 545, 87 S.Ct. at 1740, so that the decision of "[w]hen the right of privacy must reason-

ably yield to the right of search is * * * [made] by a judicial officer, not by a policeman or government enforcement agent." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *quoted in Camara,* 387 U.S. at 529, 87 S.Ct. at 1735.

Neither *Barlow's* nor its forebears suggested engrafting an additional requirement that the subject of the warrant be notified of the basis for the magistrate's approval of the search. In fact, the dissent expressly acknowledged in *Barlow's* that even if a warrant is required, an inspector would not be prevented. from making a harassing or nonroutine inspection if he makes undetected bad faith representations in an *ex parte* warrant proceeding. *Barlow's,* 436 U.S. at 333, 98 S.Ct. at 1831. Even if the basis for the magistrate's determination of probable cause were provided in the warrant, the owner still might not know if the warrant was valid until he examined the representations of the inspector in the warrant application.

The Court in *Barlow's,* therefore, seemed to have been aware that it was not providing a comprehensive scheme whereby the owner could definitively assess the validity of a warrant from its face. In discussing the requirement of notice to the owner, the Court stated that in addition to notice that a neutral magistrate had approved the search, a proper warrant would "advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed." *Barlow's,* 436 U.S. at 323, 98 S.Ct. at 1826. The language in the warrant limiting the extent of the authorized search clearly met this requirement in the instant case. Hence, we cannot uphold the district court's finding that the warrant was facially insufficient because it did not set forth the basis for the magistrate's finding of probable cause.

### III.

The district court also held the warrant invalid because it did not legally authorize the use of personal air sampling devices. The holding was based on the requirement

in *Barlow's,* quoted above, that the warrant be based on "assurances from a neutral officer that *the* inspection is reasonable under the Constitution." [Emphasis added by district court.] The district court construed this language, together with the requirement that the warrant advise the owner "of the scope and objects of the search," to mean that the inspecting officer must present the magistrate with a specific showing of the inspecting activities he intends to conduct. Additionally, the district court held that the magistrate:

> must determine from a sufficient and fact-specific showing that such activities (1) are reasonably necessary to achieve the objects of the inspection, and (2) do not unreasonably burden the owner's use of the premises or unreasonably interfere with the activities legitimately carried on there.

Because the record shows that the inspecting officer did not make such a showing to the magistrate with respect to the air sampling devices, the court below concluded that the warrant did not authorize the use of such devices. The district court did not take sufficient cognizance of the fact that the use of personal sampling devices had been specifically authorized in an OSHA regulation since December 1982, well before the November 1983 warrant application. *See* 29 C.F.R. § 1903.7(b) (1983).[1] The validity of this regulation has never been challenged by defendants, and has been upheld by the Fifth Circuit in the only challenge known to us. *Service Foundry Co. v. Donovan,* 721 F.2d 492, 496–97 (5th Cir.1983).

■■■ The instant case therefore presents a situation in which the only alleged deficiency in the agency's application to the magistrate was the failure to state expressly that OSHA would utilize a speci-

fied legally authorized inspection technique. We hold that this deficiency did not violate defendants' Fourth Amendment rights.

In the context of a criminal warrant, the Supreme Court has interpreted the "precise and clear" warrant language in the Fourth Amendment to encompass only three requirements before a valid warrant can issue:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched. *Dalia v. United States,* 441 U.S. 238, 255, 99 S.Ct. 1682, 1692, 60 L.Ed.2d 177 (1979) (citations omitted).

*Dalia* involved the issue of whether a covert entry by FBI agents to install bugging equipment was authorized by a warrant which merely authorized electronic surveillance, when the warrant application made no mention of the method to be used in installing the bugging equipment. The Court's holding, that the covert entry was authorized by the warrant, was premised on the following:

> Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the three requirements discussed above, search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search autho-

---

1. We do not attach any significance to the fact that the inspection officer attached a copy of a superseded version of § 1903.7(b), adopted in February 1982, to the warrant instead of the applicable December 1983 regulation. There is no difference in the substantive language of the two regulations, even though the earlier version, which was challenged in some courts, contained the language relating to the use of personal sampling devices in an Interpretative Note, rather than in the body of the regulation itself. Thus, even if the magistrate acted pursuant to the older regulation, his action thereunder did not differ from the action he was authorized to take under the newer, applicable regulation.

rized by warrant—subject of course to the general Fourth Amendment protection "against unreasonable searches and seizures." *Id.* at 257, 99 S.Ct. at 1693.

We believe that this holding in *Dalia* has no less force in the context of administrative search warrants than it has for criminal search warrants. The Supreme Court decided in *Camara* and *Barlow's* that the requirements for the issuance of administrative search warrants are more lenient than for criminal search warrants, in that they require a lesser showing of probable cause. We have found no authority which suggests that more restrictive requirements obtain for the issuance of administrative search warrants than for criminal search warrants.

Therefore, when we apply the three *Dalia* requirements to the facts of the instant case, it is clear that each of them has been met. Defendants do not question that the subject warrant was issued by a neutral, disinterested magistrate, or that the warrant described the things to be seized and the place to be searched with the requisite particularity. Moreover, as has been seen, *supra*, defendants have never contended that the administrative plan, set forth in the inspection officer's application to the magistrate, did not meet the probable cause standard established in *Barlow's.*

We are aware that some courts have prevented the government from enforcing an inspection warrant which contemplated the use of inspection techniques—specifically, personal sampling devices—which were not at that time authorized by statute or regulation. *See In re Metro-East Mfg. Co.,* 655 F.2d 805 (7th Cir.1981); *Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283 (9th Cir.1979).[2] We need not reach this issue here, since the contemplated inspection technique at issue was specifically

authorized by a regulation, the validity of which defendants do not challenge.

We hold, therefore, that the warrant may not be struck down because of the inspection officer's failure to make a "fact-specific showing" to the magistrate that the legally authorized inspection techniques contemplated were reasonably necessary to achieve the objects of the inspection, and would not unreasonably burden the owner's use of his premises or unreasonably interfere with the activities carried on there.[3]

## IV.

■ Because the district court quashed the warrant on grounds of facial insufficiency and the inspection officer's failure to make a proper showing, it never reached the principal contention advanced by defendants in opposition to the government's civil contempt petition—that the use of the personal sampling devices is unreasonable. Although the applicable OSHA regulation (29 C.F.R. § 1903.7(b)) authorizes the use of personal sampling devices as "reasonable investigative techniques," it is controlling only to the extent that it does not violate its authorizing statute or the Constitution. Part of this statute, 29 U.S.C. § 657(a), permits OSHA inspections only "within reasonable limits and in a reasonable manner," a requirement consistent with the Fourth Amendment's express prohibition against unreasonable searches and seizures. *See Barlow's,* 436 U.S. at 333–34, 98 S.Ct. at 1831 (Stevens, J., dissenting).

Pursuant to these authorities, we therefore agree with the Fifth Circuit's holding in *Service Foundry* that "the object of the warrant may challenge the search as being unreasonable under the particular circumstances." 721 F.2d at 497. In that case, the court found that the employer had pro-

---

**2.** The present language of 29 C.F.R. § 1903.7(b), which expressly authorizes the use of personal sampling devices, was specifically promulgated in response to the *Plum Creek* and *Metro-East* decisions. See 47 Fed.Reg. 55478 (1982).

**3.** We nevertheless reemphasize the Supreme Court's remark in *Dalia,* 441 U.S. at 259 n. 22, 99 S.Ct. at 1694, that the "preferable approach" for government agents to utilize would be to "make explicit to the authorizing court" the expected means of carrying out their inspection in their warrant application.

duced no evidence to show that its situation was a special one in which the inspection was unreasonable, because of harassment or other impermissible reasons.

■ Following *Service Foundry*, a majority of the panel believes that defendants, as the party challenging the agency's inspection warrant, failed to meet their burden of showing the OSHA search unreasonable. Because it is clear that in the routine situation, use of personal sampling devices is and for some time has been recognized as allowable and reasonable, the complainant appropriately must bear a greater burden of showing how the specific circumstances of his workplace warrant a different conclusion.[4] When faced with a valid warrant which the employer believes to be

unreasonably implemented, therefore, the employer has the threshold burden of demonstrating that special or exceptional circumstances exist which make use of the authorized inspection techniques uniquely burdensome in his workplace.[5] Placing this burden on the complainant is not at all inconsistent with *Service Foundry. Id.*

■ On this point Enterprise submitted an affidavit which, it is true, was uncontradicted. But the content of the affidavit gained little ground for Enterprise, because it contained nothing more than the employer's own conclusory statement that personal sampling devices were found burdensome in 1977, a full 6 years prior to the disputed inspection.[6] He stated further

**4.** In *Service Foundry*, 721 F.2d at 496–97, the Fifth Circuit held that the present regulation was statutorily valid. In addition, prior to promulgation of the current version of 29 C.F.R. 1903.7(b), numerous other courts recognized that the Secretary's use of personal sampling devices during health inspections was reasonable. *See, e.g., United States v. Cleveland Electric Illuminating Co.*, 689 F.2d 66 (6th Cir.1982), *aff'g In re Cleveland Electric Illuminating Co.*, 1982 O.S.H. Dec. (CCH) ¶ 25,894 at pp. 32,400–32,401 (N.D.Ohio 1982); *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir.1979).

**5.** Whether the normal procedure, in the case of a reluctant employer, should be for the employer to go to court with a motion to quash on the grounds of unreasonableness, rather than burden the Secretary with a contempt proceeding, is not before us. In this instance the Secretary's representative made his other examinations and, according to the employer's affidavit, departed with the statement that it was unlikely that he would need anything further. Defendants' next knowledge came through the receipt of a notice to show cause. Under these circumstances, it could not then be too late for a response of factual unreasonableness.

**6.** The writer of this opinion parts company here with the court majority and dissents from the remaining portion of today's decision. He believes, in contrast to his brothers, that the uncontroverted affidavit of Enterprise's president, in which he stated that in 1977 the use of such personal sampling devices "created an interference and burden on the employees," was sufficient to raise a triable issue of fact not reached by the district court. Therefore, the writer would remand the case to the district court for an evidentiary hearing on the reasonableness of the use of personal sampling devices in this context.

Moreover, even if it is assumed that the views of the majority on the insufficiency of the affidavit are correct, the writer believes that this court's order that defendants be held in contempt is both inappropriate and unjust in the circumstances of this case. Such drastic action was not taken by the court in *Service Foundry*, a similar case relied on by the majority in holding that defendants had the burden to show that special circumstances justified the refusal to permit the use of the sampling devices. The record shows that on November 10, 1983, defendants met with their attorneys, who advised them that there were court decisions holding that the use of the devices was unreasonable and that there was a good faith, legal basis for resisting such procedures. Thereupon, Enterprise's president informed the attorneys that although he was entirely willing to cooperate, he believed the devices would create an unreasonable interference with employee job performance and pose a potential safety risk (App. 52–53). It was upon such advice of counsel that on November 16, 1983, OSHA's inspector was told that Enterprise would not, for reasons fully explained, permit the attachment of the sampling devices to employees during work production. The inspecting officer was apparently satisfied with the explanation, for he left with the statement that further action "would most likely not be necessary." It was not until December 7, 1983, that Enterprise learned that its refusal to allow the use of the devices was being contested by OSHA. On November 16, 1983, when Enterprise acted on the advice of counsel, its attorneys could not know that the court in *Service Foundry*, in a case decided December 19, 1983, would impose a special burden on employers who contest the use of personal sampling devices on the ground that their use is unreasonable. Indeed, until *Service Foundry* was decid-

that Enterprise's attorney informed the OSHA inspector that the request to use personal sampling devices would be denied on the grounds that the devices were burdensome and would pose a potential safety hazard. Nothing was alleged which could serve to distinguish Enterprise's work situation from, e.g., that of Service Foundry or the generality of situations as to which personal sampling devices had long been in routine use. Enterprise's conclusory allegations simply are not specific enough to justify a hearing to quash the warrant. Before we can condone an employer's decision to ignore compliance with a valid warrant there must be a more factually specific showing. To permit anything less would condone noncompliance with a facially valid warrant at virtually any time and in any conceivable situation.

We also reject Enterprise's claim that because it acted in good faith in refusing to honor the warrant, it should not now be found in contempt. It is well established that good faith is not a defense to civil contempt. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *NLRB v. Maine Caterers, Inc.*, 732 F.2d 689, 690 (1st Cir. 1984); *Fortin v. Commissioner of the Massachusetts Department of Public Welfare*, 692 F.2d 790, 796 (1st Cir.1982). Enterprise's attempts to exempt itself from this general rule, claiming that the sanction sought by the Secretary is in fact quasi criminal in nature, must fail. "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. at 191, 69 S.Ct. at 499. The contempt sanction requested by the Secretary in this action seeks compliance with the inspection warrant and a compensatory

fine equal to the amount of the government's expense for prosecution of the case. There is nothing quasi criminal about this sanction.

*We reverse the judgment of the district court and enter an order instructing the court to hold the defendant company in contempt for its failure to comply with the warrant.*

ed, no court had ruled on the validity of the OSHA regulation permitting the use of personal sampling devices.

Therefore, even if the writer should concede arguendo that the position of the majority is otherwise correct, he would hold that instead of ordering that defendants be held in contempt, this court should adopt the order entered by the Fifth Circuit in *Service Foundry*. There, the court merely reversed the district court's decision that the use of the sampling devices was unreasonable under the particular facts in that case, directed that OSHA be permitted to update the warrant, and remanded the case for further proceedings consistent with the opinion. 721 F.2d at 498.